MERIUM CHRONIC

v.

S. Y. PUGH et al.

*Filed at Springfield March 30, 1891.*

1. DRAINAGE LAW—*act of 1885—constitutionality.* The "Act to provide for drainage for agricultural and sanitary purposes, and to repeal certain acts therein named," approved June 27, 1885, properly construed, is clearly within the legislative power conferred upon the General Assembly by section 31 of article 5 of the present constitution.

2. SAME—*dominant and servient estates—relative rights in respect of drainage.* By establishing the right of one party to construct a drain across the land of another, under the act of June 27, 1885, the first party acquires a substantive right and interest in the land of the other,—a right which is protected from invasion, even against the owner of the land, by penal enactment. The interest or easement thus acquired imposes upon the servient estate not merely the burden of having the soil perpetually used as a conduit for carrying off the drainage from the dominant estate, but the owner of that estate, his heirs and assigns, acquire in perpetuity the right to enter at all proper seasons for the purpose of making repairs; and the servient lands are subject, for all time, to the burden of receiving the waters which will continually be discharged upon them from the drain.

3. SAME—*jurisdiction of justice—filing bond and plat.* Where it appears from the transcript of a justice of the peace, in a suit by one party to extend his drain on to the land of another, that a bond was given and approved, and it further appears that a map or plat of the land was filed before the justice, however imperfect it may be, the proceeding will not be dismissed, on appeal, for want of jurisdiction in the justice, and the court may allow a proper bond and plat to be filed.

4. SAME—*measure of damages—the constitution and the statute construed.* While the section of the constitution relating to drainage is silent on the question of compensation to the owners of lands over which drains are to be constructed, the court is not inclined to adopt the view that the framers of that instrument intended to authorize the taking of private property, even for the purposes of drainage, without making just compensation, at least to the same extent as in the case of a taking for a public use.

5. The words in section 6 of the Drainage act of June 27, 1885, that the court "shall allow the defendant or defendants such actual damages °only as will be sustained by entering upon the land and constructing

such drain," clearly embrace all damages which will be sustained by or in consequence of the entry upon the land and the construction of the drain ; and the use of the word "only" can not be held to have the effect of restricting damages to anything less than all thus occasioned.

6. The entry upon the land and the construction of the ditch, in pursuance of a judgment of condemnation, constitute, in law, a taking and appropriation of a perpetual easement in the defendant's land, and all damages, both direct and consequential, which necessarily result from such taking, are actual damages occasioned by the construction of the drain.

7. If, by reason of the creation of the easement, the defendant's land is diminished in value, or is depreciated, no reason is perceived why such depreciation in value may not be regarded as representing the actual damages resulting from the construction of the drain. Substantially the same rules for the ascertainment of damages which prevail in proceedings for the condemnation of private property for public use should be adopted in cases arising under the Drainage act.

8. APPEALS—*right of appeal—in drainage cases—from justice of the peace—the statute construed.* An appeal lies from the judgment of a justice of the peace establishing the plaintiff's right to construct a tile drain through the defendant's land, although the Drainage act of 1885, under which the proceeding is had, does not expressly provide for an appeal. Section 5 of that act, by adopting the procedure before justices of the peace, is sufficient to show a right of appeal.

9. That part of section 6 of the Drainage act of 1885 which provides that "the judgment shall be final and conclusive between the parties until after the expiration of two years from the finding in the former case," does not deny the right of appeal from the judgment of a justice of the peace in a drainage case under that law, but was intended as a restraint upon repeated attempts by the parties to litigate the right of one party to extend his drain on to the land of the other.

10. SAME—*whether a freehold involved—right to an easement in land.* A proceeding to obtain the right to construct a tile drain over the land of another, under sections 4 to 10 of the "Act to provide for drainage for agricultural and sanitary purposes," etc., approved June 27, 1885, involves a freehold, within the meaning of the statute fixing the relative appellate jurisdiction of this court and the Appellate Court, and an appeal from an order establishing such right lies directly from the trial court to this court.

APPEAL from the Circuit Court of Clark county; the Hon. E. P. VAIL, Judge, presiding.

Messrs. GOLDEN & HAMILL, for the appellant:

As to the right of appeal from the judgment of the justice of the peace, see Drainage act of 1885, secs. 5, 6; Rev. Stat. chap. 79, sec. 62; *Town of Partridge* v. *Snyder,* 78 Ill. 519; *Webster* v. *People,* 14 id. 365; *Knowles* v. *Wayne City,* 31 Ill. App. 471.

No bond being filed, the justice had no jurisdiction to issue the summons. (Drainage act, sec. 8.) Section 9 also requires the filing of a plat of the lands.

As to the true measure of damages, see *Chaplin* v. *Comrs. of Highways,* 129 Ill. 651.

Any law which authorizes the taking of private property for private use is unconstitutional. *Nesbitt* v. *Trumbo,* 39 Ill. 110; *Crear* v. *Croply,* 40 id. 175.

Private property can only be condemned for a public use. *Chaplin* v. *Comrs. of Highways,* 129 Ill. 651; Mills on Eminent Domain, sec. 22.

The legislature has no power to take the property of one person and give it to another, without reference to some public use. Cooley's Const. Lim. sec. 530.

Nor would it be material to inquire what quantum of interest would pass from him. It would be sufficient that some interest, the appropriation of which detracted from his right and authority and interfered with his exclusive possession as owner, had been taken against his will, and if taken for a purely private purpose it would be unlawful. Cooley's Const. Lim. 531.

The construction of a drain, or discharging water upon land, is a "taking." Mills on Eminent Domain, sec. 30.

It has been held that a drain for the mere purpose of improving farms is not a public use. *Anderson* v. *Draining Co.* 14 Ind. 199; *McQuillen* v. *Hatton,* 42 Ohio St. 202.

A flume intended to obtain water for a mine is not a public use, although the mine owner intends to supply water to other persons for mining purposes. *Lorenz* v. *Jacobs,* 63 Cal. 73.

The question whether the use to which it is sought to appropriate the property is a public use or purpose, is for judicial determination. *Railway Co.* v. *Wiltse*, 116 Ill. 449.

The necessity for the drain must appear, and the use or purpose must be public. *Chaplin* v. *Comrs. of Highways*, 129 Ill. 651.

In so far as the legislature has attempted, by sections 5 to 9 of the Drainage act, to confer the right upon one land owner to construct a drain on or across the land of an adjoining owner, against his will, as a mere private drain, without reference to the public necessity or utility of the proposed work, the act is unconstitutional. And even were the power of the legislature to authorize one man, for private purposes, to enter upon another's land and construct a ditch against his will, unquestioned, the sixth section of this act would be clearly invalid in attempting to limit the damages to "such actual damages only as will be sustained by entering upon the land and constructing such a drain."

This appeal involves a perpetual easement, which has been held by this court to be a freehold, and also presents the validity of a statute. It is therefore properly taken from the circuit court to this court. *Chaplin* v. *Comrs. of Highways*, 129 Ill. 651.

Mr. NEWTON TIBBS, for the appellees:

The judgment of the justice of the peace was final, and no appeal will lie from it. Drainage act, secs. 6, 7; *Lickmon* v. *Morgan County*, 32 Ill. App. 414.

A bond and plat were filed before the justice of the peace, and he had jurisdiction. But the objection came too late on appeal.

As to the argument of appellant that the law governing this case is unconstitutional, we have to say, by section 31 of article 4 of the constitution of 1870 it is provided that the General Assembly may pass laws permitting the owners of land

to construct drains, ditches and levees, for agricultural and sanitary or mining purposes, across the land of others, and that this part of the statute is fully warranted by the constitution, and is a valid and wise law.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a proceeding brought by Pugh and Dunagan against Mrs. Merium Chronic, under the provisions of sections 4 to 10 of the "Act to provide for drainage for agricultural and sanitary purposes, and to repeal certain acts therein named," approved June 27, 1885, to obtain the right, without the defendant's consent, to construct a tile drain from the plaintiffs' lands on to and part way across an adjoining tract of land belonging to the defendant. At the trial before the justice of the peace the court found for the plaintiffs, and awarded the defendant one dollar as the actual damages which will be sustained by her by the plaintiffs' entering upon her land and constructing said drain, and judgment was thereupon entered in her favor for said sum of one dollar and costs. From that judgment the defendant appealed to the Circuit Court of Clark county, where a trial was had before the court and a jury, resulting in a verdict finding no damages for the defendant. Upon that verdict a judgment was rendered against the defendant for the costs incurred in the Circuit Court, and by a further appeal the defendant has brought the record to this court for review.

The question is raised whether the appeal has been properly brought from the Circuit Court directly to this Court. The right sought to be established by the plaintiffs upon and over the land of the defendant is in the nature of a perpetual easement. By the provisions of section 7 of the act above mentioned, the plaintiff in a proceeding of this character, upon the payment of the judgment for the damages awarded and costs, obtains the right to enter upon the land of the adjoining proprietor and construct his drain, and also the right, at all times thereafter, in proper season, to enter upon said land for the

purpose of repairing the drain, and it is made his duty to keep it in good repair, and it is declared that this right and duty shall pass to the heirs and assigns of the land for the benefit of which the drain is constructed. Section 10 moreover makes it a misdemeanor, punishable by fine, and after the second offense by fine and imprisonment, for any person or persons to willfully fill up, injure or destroy any drain constructed as in said act required, or to willfully prevent or delay the construction thereof. Clearly, the successful issue of a proceeding of this character vests in the plaintiff an estate in fee in the easement sought to be acquired. This, as we have frequently held, is a freehold estate, within the meaning of the statute fixing the relative appellate jurisdiction of this court and the Appellate Court. *Chaplin* v. *Commissioners of Highways*, 126 Ill. 264; *Oswald* v. *Wolf*, id. 542; *Tinker* v. *Forbes, ante*, 221. The appeal was properly taken to this court.

In the Circuit Court a motion was made to dismiss the appeal to that court, on the ground that, in cases of this character, the statute makes no provision for an appeal from the judgment of the justice of the peace. It is true that no appeal is expressly given by the terms of the statute itself, but section 5 provides that, when it is necessary to extend drains on or through the land of others to obtain a proper outlet, and the person desiring to drain proposes to construct such extension at his own expense, by means of an ample and properly made tiled ditch, and the owners of the land refuse to consent thereto, the person or persons desiring to drain may cause a summons to issue from any justice of the peace in the county, in the same form, and returnable in the same manner, as other summons in civil suits, "and proceeding shall be had thereon as in other civil causes before justices of the peace."

It can not be doubted that the Legislature intended by these provisions to subject proceedings of this character to the same rules of practice prescribed by law for the conduct of civil suits instituted and prosecuted before justices of the peace, and by

reference to the statute regulating the practice in justices'
courts it will be found that appeals from judgments of justices
of the peace to the Circuit Court are there given in all cases.
R. S. 1874, chap. 79, sec. 62. It would thus seem to follow
necessarily that the appeal in this case was properly allowed.

The contrary conclusion, however, is sought to be drawn
from the provisions of section 6 of the Drainage Law. That
section provides that the justice, or the jury if one is impan-
eled, shall hear the evidence, and if they find that the drain,
if constructed in the manner proposed, will not empty into a
natural water-course or into a natural depression leading to
such water-course, or into a drain in a public highway, they
shall find for the defendant; but if they find that the proposed
drain will empty into a natural water-course, natural depres-
sion or highway drain, they shall find for the plaintiff and
allow the defendant his damages. The section then concludes
with the following provision: "The judgment shall be final
and conclusive between the parties until after the expiration
of two years from the finding in the former case." It will be
observed that the provision is not that the judgment of the
justice of the peace shall be final, but merely that the "judg-
ment," that is, the final judgment in the proceeding, shall be
final. It may therefore just as properly be held to mean the
final judgment on appeal as the judgment pronounced by the
justice of the peace. The provision here quoted was undoubt-
edly inserted as a restraint upon repeated attempts by the
parties to litigate the right of one party to extend his drain
on to the land of the other, and not for the purpose of taking
away the right of appeal.

A motion was made in the Circuit Court by the defendant
to dismiss the proceeding on the ground that no bond was
given and no sketch or plat of the land to be drained filed be-
fore the original summons was issued, as required by sections
8 and 9 of the Drainage Law. Said motion was overruled,
and a cross-motion by the plaintiffs for leave to file a new bond

and plat was allowed. The decision of these motions is assigned for error. We think it sufficiently appears that a bond and plat were filed before the summons was issued. No bond seems to have been returned by the justice to the Circuit Court with his transcript, but the transcript recites that before the summons was issued, the plaintiff filed a satisfactory bond in the sum of $50 for costs and damages, and also a plat of the land to be drained. This recital, at least in the absence of any evidence tending to impeach it, must be taken to be true. It moreover appears that a somewhat rude and imperfect sketch of the land to be drained was returned by the justice with his transcript, and that sketch, imperfect as it is, must be regarded as a sufficient attempt to comply with the statute, so far as the filing of a sketch or plat is concerned, to give the justice jurisdiction to issue the summons. It thus appearing, that a bond and plat were filed at the institution of the proceeding, there was no error in refusing to dismiss the suit, or in allowing the plaintiffs to file a new bond and plat.

It is insisted that the statute under which this proceeding was instituted is unconstitutional because it provides for the taking of the private property of one land-owner for the private use of another. It is sufficient to say, that said statute is clearly within the legislative power conferred upon the General Assembly by section 31 of article 5 of our present State Constitution. That section provides that: "The General Assembly may pass laws permitting the owners of lands to construct drains, ditches and levees for agricultural, sanitary and mining purposes, across the lands of others."

The only remaining question to be considered relates to the rulings of the court in the admission of evidence bearing upon the question of damages. The defendant sought to prove by various witnesses the entire damages, both direct and consequential, which she would suffer by the construction of the proposed drain on her land, and the operation of said drain after it should be constructed. The court, however, excluded

all evidence of damages except of such actual damages as would be sustained by the plaintiffs' entering upon her land and constructing the proposed drain.

Section 6 of the Drainage Act provides that in case, in proceedings of this character, the judgment is in favor of the plaintiff, the court "shall allow the defendant or defendants such actual damages only as will be sustained by entering upon the land and constructing such drain." The construction put upon this provision by the Circuit Court seems to have been, that the right to compensation of a land owner for the servitude imposed upon his land by the construction over it of a drain was limited to such actual damages as would be the direct and immediate result of the entry upon his land, the digging up of the soil and the laying of the tile. Manifestly, if this construction is to be accepted as the true one, the compensation provided for is far from being adequate. The construction and maintenance of a drain of this character impose upon the land over which it is constructed a perpetual servitude, and it needs no argument to show that besides the interference with the soil inseparable from the construction of the drain, the creation of such servitude necessarily involves various other elements which are equally deserving of compensation. In fact the compensation provided for would in many cases cover only a very trifling and insignificant part of the damages caused by the creation of the easement, as the drain may be constructed at a season and under circumstances which render the damages caused by digging up the soil and laying the tile merely nominal. By the construction of the drain one of the parties acquires and appropriates a substantive right and interest in the lands of the other, a right which, as we have seen, is, when acquired, protected from invasion, even as against the owner of the land, by severe penal enactments. The interest or easement thus acquired imposes upon the servient estate not merely the burden of having the soil perpetually used as a conduit for carrying off the drainage from the

dominant estate, but the owner of that estate, his heirs and assigns, acquire, in perpetuity, the right to enter, at all proper seasons, for the purpose of making repairs, and the servient lands are subjected for all time to the burden of receiving the water which will continually be discharged upon it from the drain.

If the construction of the statute in question adopted at the trial below were the only one of which it is susceptible, we might feel compelled to declare the statute unconstitutional in that it provides for taking and appropriating private property, by proceedings *in invitum*, without making just compensation. Section 13 of article 2 of the Constitution prohibits the taking or damaging of private property for public use without just compensation, and under this and similar provisions of State Constitutions it has been uniformly held in this and other States, that the power to authorize the taking of private property for private use, either with or without compensation, is impliedly prohibited. *Nesbitt* v. *Trumbo*, 39 Ill. 110; Lewis on Eminent Domain, sec. 157, and authorities cited in note.

It is true the section of the Constitution in relation to Drainage authorizes the passage of laws permitting the owners of land to construct drains, for agricultural, sanitary or mining purposes, across the lands of others, and is silent on the subject of compensation to the owners of the lands over which such drains are constructed, but we are not inclined to adopt the view that the framers of the Constitution intended to authorize the taking of private property, even for the purpose of drainage, without making just compensation. If the construction of drains for the purposes mentioned is to be regarded as a public purpose, then the taking of private property for that purpose comes directly within the prohibition of section 13, article 2. If, on the other hand, it is to be treated as a taking of private property for a mere private purpose, we are inclined to the view that, by analogy, it must be held to come under

the same rule, so far as the duty to make compensation is concerned. If the taking of private property for public use and to subserve the public welfare can be authorized only upon making just compensation, we will not readily attribute to the framers of the Constitution an intention to authorize the taking of private property for private use by proceedings *in invitum,* without making compensation to at least an equal extent.

But we need not in this case go so far as to definitely determine the constitutional questions here suggested, as the statute under consideration is clearly capable of a construction which will bring it into harmony with what we are inclined to adopt as the constitutional limitation applicable to it, and at the same time make it consistent with the plain dictates of natural justice. It authorizes the allowance of "such actual damages only as will be sustained by entering upon the land and constructing such drain." This language clearly embraces all damages which will be sustained by, or in consequence of, the entry upon the land and the construction of the ditch, and the use of the word "only" can not be held to have the effect of restricting it to anything less than all of the damages thus occasioned. The entry upon the land and the construction of the ditch, when made in pursuance of a judgment obtained in proceedings instituted for that purpose under the provisions of the statute, constitute, in law, a taking and appropriation of a perpetual easement in the defendant's land, and all damages, both direct and consequential which necessarily result from such taking and appropriation, are actual damages occasioned by the construction of the drain. If by reason of the creation of the easement the defendant's land is diminished in value or is depreciated, no reason is perceived why such diminution in value may not be regarded as representing the actual damages resulting from the construction of the drain. We think, therefore, that substantially the same rules for the ascertainment of damages which prevail in proceedings for the

condemnation of private property for public use should be adopted in cases arising under this statute.

We are disposed to adopt the construction we have thus indicated, although it may not be in all respects the most obvious one, not only for the reasons above stated, but because we will not readily attribute to the General Assembly an intention to authorize the taking and appropriation by one person of the private property of another, upon any terms less than the obviously fair and equitable ones of making just and full compensation for all damages directly and necessarily resulting from such taking. This construction does no violence to any of the language employed, and is the only construction which, in our judgment, is consonant with the principles of natural justice, which, as we are bound to presume, are always recognized as controlling by the law-making power.

It follows from what we have said that the Circuit Court erred in the exclusion of evidence as to damages, and for that error the judgment must be reversed and the cause remanded.

*Judgment reversed.*