# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## THIRD DISTRICT—MAY TERM, 1891.

## EDWARD O'CONNELL

### v.

## JOSHUA BOWMAN ET AL.

*Highways—Prescription—Usage Must be Free from Interruption for Total Period—Dedication—Acceptance—Intent—Evidence—Trespass.*

1. In an action of trespass brought by plaintiff against defendants for breaking his close, where the defense was that the fence in question had been erected by plaintiff on land to which the public had acquired a right as a highway by prescription, this court holds that the evidence showed that during the period in which the public had used the land as a highway, there had been a substantial interruption of its use which prevented the statute from running.

2. To establish a highway by dedication, there must not only be an offer by the owner but his offer must be accepted by the public; and mere user by the public of the land as a highway is not sufficient to constitute such acceptance. Until the offer of dedication has been accepted it may be revoked by the owner, unless private rights have intervened.

3. To prove a dedication, the intention to dedicate must be clearly shown, and be found as a distinct fact. Upon the case presented, the intention of the plaintiff was a direct and material fact in issue, and he should have been allowed to state his intent in performing certain acts shown in evidence.

[Opinion filed April 11, 1892.]

(654)

IN ERROR to the Circuit Court of Brown County; the Hon. WILLIAM MARSH, Judge, presiding.

Messrs. W. L. & R. E. VANDEVENTER, for plaintiff in error.

In Warren v. Jacksonville, 15 Ill. 236, it is said: "While so much land lying in common in this country, remains free to public uses and travel, until circumstances induce owners to inclose, we can deduce no strength of inference or conclusion from mere travel across it by the public, without objection from the owner. It is neither the temper, disposition, fashion or habit of the people, or custom of the country, to object to community enjoying such privilege until owners wish to inclose."

In Fox v. Virgin, 5 Ill. App. 515, this court declares that "mere acquiescence of the owner in public travel over his wild, uninclosed, timbered land, for over twenty years, is not sufficient to give the public a title to any part of the land." And in the same case and in Fox v. Hodgson, 11 Ill. App. 513, it is unequivocally declared that the public can acquire no right to a road over vacant and uninclosed land by use alone for twenty years. This court also categorically announces the same doctrine in Peyton v. Shaw, 15 Ill. App. 196; see, also, Harper v. Town of Dodds, 3 Ill. App. 331. In the Peyton-Shaw case, *supra*, it is further said: "It may be true, as intimated in Owens v. Crossett, 105 Ill. 354, that the public may acquire a right of way by prescription over uninclosed lands, yet the proof of such prescriptive right must rest on something more than mere travel over it by the public, acquiesced in by the owner, for since no inference of a dedication can be drawn from such permissive use of the land, it is very evident that so long as the adjoining lands remain uninclosed such use could never ripen into a prescriptive right." This court also in Toof v. City of Decatur, 19 Ill. App. 204, after referring to the ordinary rule as to the presumption of the existence of a highway from user, says: "An exception to this rule is recognized in the case of wild and uninclosed land."

In case of Miner v. Phillips, 42 Ill. 123, our own Supreme Court expressly recognize the same principle, where it is held proper to ask a witness generally, " whether his sale to the plaintiff was made in good faith." The court goes on to say that it is the practice to ask general questions concerning motives and intentions, and let the other side go into the details on cross-examination. See p. 131 of that report. The question propounded to the plaintiff in the case at bar was unquestionably a proper one, and the astute and learned counsel for defendants was unable to state any specific objection to it, and, it being upon one of the most material points involved in the case, it was manifest error to deprive the plaintiff of his own testimony touching that question. It was not for the court to say or determine what weight should be given to the answer to the question, for, if the evidence was legally admissible and tended to elucidate any material matter in issue, and submitted to the consideration of the jury, it was error to exclude it. Prather v. Vineyard, 4 Gilm. 40; Hough v. Cook, 69 Ill. 581; Rogers v. Brent, 5 Gilm. 587; Slack v. McLagan, 15 Ill. 242; C. & N. W. Ry. Co. v. Ingersoll, 65 Ill. 399, end of opinion.

For the convenience of the court we mention a few of the numerous cases sustaining the text in 1 Thompson on Trials, Sec. 383, *supra:* Shocky v. Mills, 71 Ind. 288; Thurston v. Cornell, 38 N. Y. 281; Fish v. Chester, 8 Gray, 506; Hulett v. Hulett, 37 Vt. 851; Hale v. Taylor, 14 N. Y. 465; Edwards v. Currier, 43 Me. 474; French v. Marstin, 24 N. H. 440 (S. C. 57 Am. Dec. 294); Graves v. Graves, 45 N. H. 323; White v. Tucker, 14 Ohio St. 468.

It is not true that the law presumes a dedication from the mere fact that the road had been used by the public for fifteen years without interruption, and that the owner " acquiesced therein." The instruction totally ignores that indispensable and vital element—the actual intention of the owner to dedicate the land to public use as a highway. The following authorities condemn this instruction in the most positive and unequivocal terms : Grube v. Nichols, 36 Ill. 92; Marcy v. Taylor, 19 Ill. 634; Harding v. Town of Hale, 61 Ill. 193; Trustees v. Walsh, 57 Ill. 363; Ill. Ins. Co. v.

Littlefield, 67 Ill. 368; Fisk v. Havana, 88 Ill. 208; Eckhart v. Irons, 128 Ill. 568; City of Bloomington v. Cemetery Association, 126 Ill. 221; City of Chicago v. Hill et al., 124 Ill. 646.

We ask the court to read the instruction copied on p. 199, in 61 Ill., in Harding v. Town of Hale. It is much more favorable to the land owner than the one we are criticising in this case, and yet it was expressly disapproved and condemned by the Supreme Court because it totally ignored the element of intention, and substituted the mere "acquiescence of the owner."

In City of Bloomington v. Cemetery Association, 126 Ill. 221, it is said by the Supreme Court: "Unless a land owner, by some unequivocal overt acts or declarations given of his *intention* to have a strip thereof included in a street, and thereby inducing the public to use, and a city to improve the same as part of the street, he will not be estopped from denying a dedication. Mere non-action will not raise an implication of intention to dedicate private property to public use, nor will it estop the owner to deny such intention." If the first instruction given for defendants can be sustained for one moment in the face of all these unequivocal cases, we frankly confess we are unable to discover the ground on which it may be accomplished.

It is not the province of the court to tell the jury what anything proves; the jury, without any intimation whatever from the court, must determine what, if anything, the evidence proves. Nor can the court suggest or state to the jury what inferences or conclusions they may draw from the evidence. The following are some of the numerous authorities condemning all such practices: Railway Co. v. Moranda, 108 Ill. 576; Tascott v. Grace, 12 Ill. App. 639; Chichester v. Whiteleather, 51 Ill. 259; Chambers v. The People, 105 Ill. 417; Aurora v. Pennington, 92 Ill. 564; Coon v. The People, 99 Ill. 368; Milling Co. v. Thomas, 27 Ill. App. 141; Town of Evans v. Dickey, 117 Ill. 291; Railway Co. v. Warner, 123 Ill. 38; Myers v. Ry. Co., 113 Ill. 386.

Acceptance is a pure question of fact, to be found by the jury, unbiased by intimations from the court.

Mr. JOHN J. McDONALD, for defendants in error.

The bill of exceptions is the pleading of plaintiff in error, and if liable to the charge of ambiguity, uncertainty or omission, it should be construed most strongly against him who prepared it. Rogers v. Hall, 3 Scam. 5; Wright v. Smith, 82 Ill. 527; 1st Nat'l Bank v. Haskell et al., 23 Ill. App. 616; Chicago City Ry. v. Duffin, 24 Ill. App. 31.

The bill of exceptions herein does not contain nor purport to contain all the evidence, and the court will presume the evidence heard sufficient to support the verdict. James v. Dexter, 113 Ill. 654; Nimmo v. Kuykendall, 85 Ill. 476; Nason v. Letz, 73 Ill. 371; Miner v. Phillips, 42 Ill. 123; Tarble v. People, 111 Ill. 123; Blanchard v. Burbank, 16 Ill. App. 380; Trustees of Schools v. Stoltz, 26 Ill. App. 389.

And where the bill of exceptions fails to state that all the evidence is contained therein the court will not undertake to pass upon the facts. Tarble v. People, 111 Ill. supra.

And will not consider instructions unless all the evidence is before the court. Miner v. Phillips, 42 Ill. 123; Leavitte v. Randolph County, 85 Ill. 508; Cogshall v. Beesley, etc., 76 Ill. top of page 447.

Because, as laid down in 2 Thompson on Trials, Sec. 2777, —"in three cases it is necessary that the bill of exceptions should set out all the evidence: 1. Where the verdict is challenged as being unsupported by the evidence. 2. Where error is assigned upon the ruling of the trial court in giving or refusing instructions, the same not being intrinsically bad in point of law." "In the first case, if the bill of exceptions does not set out all the evidence the appellate court will presume, in support of the action of the trial court, that there was sufficient evidence to support the verdict; in the second case, if the bill of exceptions is deficient in like manner, the appellate court will presume that there was evidence to which the instructions which were given, were applicable."

O'Connell v. Bowman.

Counsel for plaintiff in error seems to have anticipated an attack on his bill of exceptions, by quoting in support thereof, several cases of our Supreme Court. The case in 113 Ill., 146, cited by him, is not in point, as at top of page 150 the court says, that the bill was by agreement of parties. The Leavitt case in 85 Ill., at top of page 509, does not decide the point as stated by counsel. The cases in 73 Ill., 371, and 83 Ill., 407, are all different from this case, as here counsel attacks the finding of the jury, decisions of the court on questions of evidence and the instructions of the court. A perfect and complete legal drag-net of objections. How can this court give effect to that line of decisions of our Supreme Court, which hold that new trials will not be granted for slight errors in the giving and refusing instructions, where the verdict is clearly right, unless the same evidence is presented to you that was introduced before the court below ? C. & W. I. R. R. Co. v. Dooling, 95 Ill. 202; Albin v. Kinney, 96 Ill. 214; Lowry v. Coster, 91 Ill. 182; C. & E. I. R. R. v. Rung, 104 Ill. 646, and many other cases. Here was a hotly contested jury trial continuing two days, and the bill of exception shows a large number of witnesses were sworn. With all the facts fresh in the memory of the court a new trial was refused because the court would have found the same way the jury did. Beseler v. Stephani, 71 Ill. 400; Hewitt v. Jones, 72 Ill. 218; Burling v. I. C. R. R. Co., 85 Ill. 18; Taylor v. D. O. & O. R. R. Co., 10 Ill. App. 311 (3d Dist.).

It is difficult enough to win verdicts, and it is hard to run the risk of losing one, where the evidence is distorted and garbled as shown on the face of the record in this case. "When a question is fairly and intelligently submitted to a jury, their determination ought not to be overthrown because it does not entirely correspond with the judgment of the court; we had better abolish the trial by jury altogether, or at least require the judge to tell the jury precisely and distinctly what his opinion of the case is, and require them to find accordingly, and thus save the expense of a second trial. The theory of the trial by jury is, that

they are better capable of judging of the facts than the court, and to secure to suitors the benefits of this blessing, we must give them the advantage of their superior judgment." Per Caton, Judge, in Kincaid v. Turner, 2 Gi'm. top page 622.

MR. JUSTICE PLEASANTS. This was an action of trespass, commenced by plaintiff in error August 15, 1890. The declaration alleged that on the 10th of April preceding, the defendants broke his close, to wit: The E. $\frac{1}{2}$, S. W. $\frac{1}{4}$, Sec. 16, T. 1 South, R. 1 West, in said county, and destroyed his fence standing thereon. Verdict not guilty; a new trial denied, and judgment for defendants for their costs.

It was admitted that plaintiff had owned the premises described, which were bottom lands between the bluffs and the bed of the Illinois river, and had · been continuously in possession, from August 25, 1861, to the time of the trial; and that on the day alleged the defendants took down and removed a fence which he had erected in the spring of 1888, along the west bank of a body of water known as " Big Lake," upon said premises. They were never cultivated or inclosed until the spring of 1875, when he built a fence around them, that portion on the east side being along upon the west bank of said lake about two rods from the water's edge, where the bank was about a foot and a half above the water at its ordinary stage. This was carried away by the high water and ice in 1879, and the premises thereafter remained open until the spring of 1888, when he built another, the east line of which was somewhat further east than the former, being at some points within a rod of the water's edge.

So much is undisputed, and with the proof of his damage, constituted the plaintiff's case.

The bill of exceptions does not purport to set forth the evidence on the part of the defendants, but only what it tended to prove; which was that " for fifteen· or twenty years next before the commencement of this suit" there had been a well defined traveled road along and over said west bank of said lake, " except during the time said first fence was stand-

ing;" that what plaintiff's witnesses called the "bank," defendants called a "ridge" or "raise," and testified that during all said time, "when no fence prevented," the people who traveled said way traveled along and upon the top of said ridge; that after leaving plaintiff's land said road diverged to the northeast and terminated at a ferry across the Illinois river a few miles below Beardstown; that it was used by many people residing in the vicinity, who traveled upon it the same as upon any other highway in the county.

In an unsuccessful attempt of the highway commissioners, in the spring of 1875, and before said fence was built, to lay out a road fifty feet wide on and along said ridge, they caused a survey and plat to be made, which the court, over plaintiff's objection, admitted in evidence, in connection with proof that he had actual notice of them and of the proceedings referred to. The surveyor's certificate states that the line of his survey ran " east to the margin of a lake, this point being about one rod west of the lake bank," and thence north, etc.

There was also evidence tending to prove that about a year before the trial, on notice from the commissioners, plaintiff promised to remove the fence he built in 1888, but afterward refused to do so or to permit it to be done, and that after that fence was erected people were compelled to travel down near the water's edge where it was wet and muddy; that the space between the fence and the lake was less than a rod wide in some places, and was not the same way over which the people traveled "when the fences were not there;" that "when the fences were out of the way" people occasionally traveled over the premises in a diagonal direction and as they pleased, but that most of the travel was then confined to the ridge. From the south line of plaintiff's land the fence ran nearly north, following the ridge fifty or sixty rods, but from that point the lake and traveled route diverged and ran northeasterly. Plaintiff knew that for many years the public or many people were traveling over and along the ridge as a highway, and he also, on a few occasions, had traveled along the road on the

ridge and between the ridge and the lake. On his part he
denied the alleged promise to remove the fence, and testified
that when notified to do so he told the commissioners there
never had been any public highway where the fence stood,
and that if they moved it he would make them pay for it.
He was asked by his counsel "whether or not he ever
intended to dedicate or donate a public highway at the
place where said fence stood upon said ridge or bank of said
lake," but on defendants' objection thereto the court refused
to allow him to answer it. Defendants admitted that no
highway had ever been laid out or established there accord-
ing to the provisions of the statute.

The foregoing are all the facts specifically referred to in
the bill of exceptions, but it adds the following general
statement: "There was evidence tending to show the
existence of all the facts recited in defendant's instructions.
But there was no other or further evidence introduced on
said trial tending to show any other or different facts or state
of facts than the foregoing — all the other evidence intro-
duced by each party and heard on the trial of said cause
having been and being of the same character as that intro-
duced by the respective parties, as above, and tending to
prove the same facts hereinbefore mentioned and contended
for by the parties respectively; and none was introduced by
either party tending to prove any other or different fact or
facts than the facts sought to be established by the respective
parties by the evidence hereinbefore stated and mentioned;
nor did defendants claim or attempt to prove a freehold in
said premises."

We understand this general statement as conceding that
there was evidence enough to support a finding of all the
facts hypothetically recited in the instructions given for
the defendants; and accordingly, excepting the admission
of the plat and survey and the refusal to allow plaintiff to
state his intention, as above set forth, all the points urged
for a reversal of the judgment are raised upon the rulings
of the court in respect to instructions.

It is not denied that in removing the fence defendants

acted by authority and direction of the commissioners of highways and would be justified if it was standing in a public highway. They claim the place was such a highway, first, by prescription under the statute, and second, by dedication of the plaintiff, the owner of the land.

The statute in force prior to July 1, 1887, was as follows: "All roads within this State which have been laid out in pursuance of any law of this State or of the Territory of Illinois, or which have been established by dedication or used for twenty years, and which have not been vacated in pursuance of law, are hereby declared to be public highways;" but by the act approved June 17th of that year, it was amended by striking out the word "twenty" and inserting in lieu thereof the word "fifteen."

The first instruction given for defendants was as follows: "If the jury believe from the evidence that a public road had been used by the public over the place in question for fifteen years or more before the commencement of this suit, without interruption, and that the owner of the land has acquiesced therein during all that time, then the law presumes a grant or dedication of the ground upon which the road runs to the use of the public for a common highway," which is copied from one given in Daniels v. The People, 21 Ill. 440, except that it substitutes "fifteen" for "twenty" and interpolates the words "before the commencement of this suit." Whether the act of 1887, reducing the prescriptive period from twenty to fifteen years was retroactive, was here made a question and largely discussed in the arguments; but we do not feel called on to decide it, because it does not appear to be presented by this record. We find therein no evidence on which a claim by prescription could be based, even if it were conceded that the period of user required to establish it was only fifteen years. Any doubt on this point must arise upon the unusual frame of the bill of exceptions and the rule which treats it as a pleading to be construed most strongly against the plaintiff in error. As has been seen, it states that there was evidence tending to show the existence of "all the facts recited in defendants'

instructions." Those hypothetically recited in the one above quoted are that " a public road has been used by the public over the place in question for fifteen years or more before the commencement of this suit;" that this use was " without interruption," and that " the owner of the land acquiesced in it during all that time." Literally, then, this general statement in the bill would seem to admit that there was evidence tending to show the existence of these facts.

But the bill states specifically the particular facts which the evidence tended to show; that there was none tending to show any other. These facts, which are not disputed, conclusively show that the public could not have used the same road, " over the place in question," without interruption and with the acquiescence of the land owner, for any period of fifteen years, unless it was a period wholly anterior to the erection of the first fence, of which there is no proof. The earliest public use of any road over plaintiff's land, directly or inferentially appearing with any definiteness, is not earlier than August, 1870—twenty years before the commencement of this suit—and counsel for defendants expressly claim it, upon the evidence, for only five years before the erection of that fence. Then was its erection a substantial interruption of the use previously permitted—a distinct withdrawal of plaintiff's acquiesence therein ? It seems to be conceded that the terms " bank," " ridge " and " raise," as used in the bill of exceptions, mean the same thing, which is a strip of higher land rising at a little distance from the water's edge; but the evidence does not precisely show that distance nor the width of the strip. It does appear, however, that the well-defined traveled road as previously used was " along and over " the ridge—" along and upon the top " of it, where the ground was dryest; that the first fence was set " upon " the ridge, about two rods from the water's edge; and that the second, though less than a rod further east, forced the travel off the ridge upon the low ground between it and the lake. (That the second was less than a rod further east than the first, is inferred from the statement in the record that it was less than a rod from the

water's edge "at some points," implying that generally it was more, while the first was only about two.) It follows that the first fence left out less than a rod of the ridge, and we may safely presume, the land being open, that the traveled road had been much more than a rod in width. The fence which left out less than a rod was therefore a substantial interruption of the use as previously enjoyed.

This conclusion is not merely an inference from the facts mentioned. The record directly states that the public use of the road therein first referred to was not continuous or uninterrupted. It expressly excepts the time during which the fences were standing.

Now a rightful interruption of the use, as by the owner of the land, is an interruption of the right also, and bars all claim by prescription. It is not pretended that before the first fence was erected a public highway had been established by any means over any part of the premises described. Plaintiff could therefore rightfully set his fence on them wherever he saw fit. His setting it where he did was a substantial obstruction of the road as previously used, and a clear denial of the right of the public to the further use of it or any part of it without his consent. It effectually barred all claim to that road or to any part of it as a highway by prescription founded in whole or part upon the previous use. To acquire such a right the public must begin its use anew.

The second fence was erected in the spring of 1888—only thirteen years after the erection of the first, and but nine after its removal. If that also was an "interruption," then upon the question of a right by prescription, the time when the suit was commenced or the alleged trespass was committed is immaterial. The first instruction in terms requires proof of user for the requisite period "without interruption," as does the law, and it is simply tautologous to say that an uninterrupted period ends at the point of time when the first interruption occurs—which in this case clearly was not the point at which the suit was commenced.

This second fence excluded public travel from the best of

whatever of the road had been left out by the first, and forced it "down the water's edge, where it was wet and muddy." The record further states that "the space between said fence and the water's edge was less than a rod wide in some places, and was not the same route or way over which the community traveled when said fences were not there." That it was a substantial interruption of the previous use is not denied but expressly claimed by defendants. On that claim their defense was based.

The law does not presume a grant or dedication from user and acquiescence for any time short of the full prescriptive period; and finding no evidence that any one road including the place in question was ever used by the public as a highway, without interruption, for that period, whether it was twenty or only fifteen years, we hold this first instruction erroneous for that reason. It applies to the third also, and to the sixth so far as the latter relates to prescription.

The same reason makes it also unnecessary to consider the effect of acquiescence by the owner in the public use of a road through open and uncultivated land—which would be pertinent only to the question of a right by prescription. Defendants further claim that by the erection of the first fence under the circumstances shown, plaintiff dedicated to public use for a highway the land thereby left out of his enclosure. If this claim is well founded, the subsequent destruction of that fence and reopening of the land would not affect it.

To prove a dedication the intention to dedicate must be clearly shown and be found as a distinct fact. The evidence may consist of any declarations or acts of the land owner naturally indicative of such intention, or of his acquiescence in the public use under circumstances which would reasonably forbid such acquiescence if there was no such intention. City of Chicago v. Hill, 124 Ill. 646; Bouvier's Law Dict., title "Dedication," and cases there cited. And the jury must determine its weight.

The fencing out of a strip of land that is suitable for a needed highway and is of little or no value, as fenced, for

any other purpose, is some evidence of an intention to dedicate it to that use. Other circumstances, though not directly declarative of intention, may add to the force of this evidence. When plaintiff erected the first fence he knew that the public were and for some years had been using as a highway the ridge on which he set it. He had so used it himself. If he also knew that proceedings were then pending for the establishment of a highway along there, that the commissioners had caused a survey to be made for one fifty feet in width, the center line of which was only one rod west of the ridge and would place the east line upon it, his knowledge of those facts was a circumstance tending to give significance to his act and throw some light upon his intention in fencing as he did. We therefore think the admission in evidence of the plat and survey in connection with proof that he knew of them at the time, was proper. They were not offered to bind him by the proceedings as taken, but to show a fact known to him, in view of which, as a motive, he may have acted. But these and like circumstances are not conclusive. They may be explained and overcome as well as contradicted. Intention is a distinct and material fact in issue, and since plaintiff must have had direct and absolute knowledge of it, we think he should have been allowed to state it. He was competent to testify to any such fact of which he claimed to have personal knowledge. That defendants and their witnesses could not have such knowledge and were therefore necessarily confined on their part to proof of evidentiary circumstances does not seem a sufficient reason for limiting him to the same kind of proof. His statement of his intention might be deemed of little weight as against acts or declarations apparently inconsistent with it, yet he had the right to make it and take his chances of credit with the jury upon such explanation as he could offer of such acts and declarations, if any such there were.

But dedication, however clearly proved, does not establish a public highway. It is but an offer, which the public is not bound or presumed to accept, because it would im-

pose public duties and burdens. Acceptance must therefore be proved. Until it is properly signified the public has no duty to perform in respect to the road offered, nor any right therein, and the offer may be modified or withdrawn by the maker unless private rights shall have intervened. Littler v. City of Lincoln, 106 Ill. 369; Lee v. Town of Mound Station, 118 Ill. 313. If the erection of the first fence was an offer of all the land thereby left out, plaintiff was at liberty to change his mind the next day and withdraw it altogether or modify it by moving the fence further east, thereby leaving out less, unless in the meantime it had been accepted as first made. And so he might do thirteen years later.

No question of any private right of defendants in the *locus* is here presented. They claim it was in a public highway, established by dedication duly accepted by the public, so as to give to the commissioners as such the right and impose upon them the duty to remove all obstructions to its use by the public, and that in removing plaintiff's fence they acted by authority and direction of the commissioners. The only evidence of acceptance before the second fence was built, was public use by travel, and the court below instructed the jury that such evidence would be sufficient. In Witley v. The People, 36 Ill. App. 609, upon the authorities there cited, this court committed itself to the opinion that it would not, and adhering to that opinion holds that the giving of this instruction was error.

For the reasons thus indicated that judgment will be reversed and the cause remanded.

*Reversed and remanded.*