## THE CITY OF CHICAGO

*v.*

## EBENEZER HILL *et al.*

*Filed at Ottawa May 9, 1888.*

1. DEDICATION—*intention, as an essential element—evidence to establish it.* Long continued use of a strip of land for a street will not alone establish a dedication of it to the public. It is of the essence of a dedication that there should be the intention to make it, and the evidence should be clear, either of such actual intention, or of such acts and declarations as will equitably estop the owner from denying such intention.

2. The fencing out of a strip of land by the owner affords strong evidence of its being left out for a street, and, without countervailing evidence, might be accepted as satisfactory proof of its dedication.

3. SAME—*acts of municipal authorities as concluding them from claiming there was a dedication.* The passage of an ordinance by a city for the condemnation of a strip of land for a street, and the filing of a petition to condemn the same, and its applying for and obtaining license of the owner to lay a sewer in such strip, will conclude the city from asserting that such strip had been dedicated by the owners.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. CLARENCE A. KNIGHT, and Mr. GEORGE BERNY, for the appellant:

If the owner of the soil throws open the passage, and neither marks, by any visible distinction, that he means to preserve all his rights over it, nor excludes persons from passing through it, by positive prohibition, he shall be presumed to have dedicated it to the public. *Rex* v. *Lloyd,* 1 Campb. 262; *Cincinnati* v. *White,* 6 Pet. 440; *Marcy* v. *Taylor,* 19 Ill. 636; *Wragg* v. *Penn Township,* 94 id. 24.

If land is used by the public as a street, with the knowledge and acquiescence of the owner, a dedication will be presumed. *Cincinnati* v. *White,* 6 Pet. 439; *Warren* v. *Jacksonville,* 15 Ill. 240; *Dimon* v. *People,* 17 id. 422; *Alvord* v. *Ashley,* id. 369;

*Rees* v. *Chicago,* 38 id. 338; *Chicago* v. *Wright,* 69 id. 328; *Follansbee* v. *Chicago,* 62 id. 288; *Regina* v. *Petrie,* 4 E. & B. 737; *Jarvis* v. *Dean,* 3 Bing. 447.

When the intention to dedicate is established, the length of the public use is not important. *Marcy* v. *Taylor,* 19 Ill. 636; *Rees* v. *Chicago,* 38 id. 337.

It is not important whether the owners, at the time of the dedication, were non-residents, and had personal knowledge of what was done by their agents. *Barclay* v. *Howell,* 6 Pet. 512; *Dimon* v. *People,* 17 Ill. 416.

The extent of the dedication can not be limited by evidence that the ground was not fit for immediate use as a street. *Barclay* v. *Howell,* 6 Pet. 498; *Rowan* v. *Portland,* 8 B. Mon. 250; *Lake View* v. *Le Bahn,* 120 Ill. 92.

Great importance is attached to the fact that investments and improvements have been made, in reference to the dedication. *Godfrey* v. *City of Alton,* 12 Ill. 36; *Rees* v. *Chicago,* 38 id. 337; *Chicago* v. *Wright,* 69 id. 328.

As between the owner and the city, in a case like this, dedication is complete, without acceptance other than public use. *People* v. *Commissioners,* 52 Ill. 501; *Marcy* v. *Taylor,* 19 id. 637; *Lake View* v. *Le Bahn,* 120 id. 92.

A dedication once completed can not be revoked by the former owner, and binds his privies in estate. *Warren* v. *Jacksonville,* 15 Ill. 240; *Rees* v. *Chicago,* 38 id. 339.

The city can not surrender or divest itself of the trust created by the dedication, except in the way provided by law. *Lee* v. *Town of Mound Station,* 118 Ill. 316; *Chicago* v. *Wright,* 69 id. 328.

Messrs. MONTGOMERY & SMITH, for the appellees:

The city has no claim by prescription. *Grube* v. *Nichols,* 36 Ill. 92; *Manrose* v. *Parker,* 90 id. 582; *Gentleman* v. *Soule,* 32 id. 271; *Quincy* v. *Jones,* 76 id. 231; *Kyle* v. *Town of Logan,* 87 id. 64.

The alleged acts relied upon by appellant to establish a dedication, are insufficient. *Grube* v. *Nichols*, 36 Ill. 92; *Herhold* v. *Chicago*, 108 id. 467; *Fisk* v. *Town of Havana*, 88 id. 208; *Kelly* v. *Chicago*, 48 id. 388; *McIntyre* v. *Storey*, 80 id. 127; *Marcy* v. *Taylor*, 19 id. 634.

Intent to accept must be clearly shown. *Grube* v. *Nichols*, 36 Ill. 96; *Insurance Co.* v. *Littlefield*, 67 id. 368.

Want of acceptance was shown by proceedings to condemn, and appellant is estopped to claim a dedication. *Chicago* v. *Johnson*, 98 Ill. 618; *Town of Princeton* v. *Templeton*, 71 id. 71.

A dedication can only be made by the owner of the fee. *Gentleman* v. *Soule*, 32 Ill. 271; *Kyle* v. *Town of Logan*, 87 id. 64.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was a suit in ejectment, brought by the appellees, against the city of Chicago, to recover possession of the west thirty-three feet of lot 3, in the assessor's division of the north-east quarter of the north-east quarter of the south-west quarter of section 34, town 39 north, range 14, east of the third principal meridian.

May, 1848, George Dellicker bought this ten acre tract. May, 1849, he died, leaving seven brothers as heirs. Three of these sold their interests to their brothers William and Frederick, so that in February, 1855, William and Frederick owned five-sevenths, Samuel one-seventh, and Leonard N. one-seventh; that same year,—October, 1855,—Leonard N. died, leaving three children,—William F., Ellen W. and Julia W., who were all minors. In 1859, Frederick Dellicker brought suit for partition against his brothers William and Samuel, and Samuel C. Wildman, as guardian of the minor children of Leonard N. In May, 1860, partition was decreed, and in December the master made deeds in pursuance of the decree.

In 1864 the assessor, following the partition made by the commissioners, made the following subdivision:

DOUGLAS                    PLACE.

Douglas place appears to be the same as Thirty-fifth street, hereinafter spoken of.

The title of appellee Ella W. Wildman is derived, two-thirds by inheritance from her father, Leonard N. Dellicker, and one-sixth from her brother William F. Dellicker, who died intestate May 6, 1863, under twenty-one years of age. Appellees Ebenezer Hill, Jr., Julia D. Hill and Ella L. Hill, all infants, take from their mother, Julia W. Hill, who died intestate April 22, 1884, leaving them, and her husband, Ebenezer Hill, Sr., surviving. Mrs. Hill, like Mrs. Wildman, derived title, two-thirds from her father, Leonard N. Dellicker, and one-sixth from her

brother William F. Dellicker. Ella W. Wildman became of age in 1865, and Julia W. Hill in 1870.

The suit was commenced in 1886, and tried in 1887. A trial before the court, without a jury, resulted in a finding and judgment in favor of the plaintiffs, and the defendant, the city of Chicago, took this appeal.

The proof of title in the plaintiffs, aside from a dedication, is not disputed, but it is insisted the land in controversy has been dedicated for the purpose of a street, known as Forest avenue, and this is the only question presented.

The strip of land claimed is thirty-three feet wide and four hundred and sixty-two feet long. Its north end is the centre line of Douglas place, which is sixty-six feet wide, then for four hundred and twenty-nine feet on the west it forms the east half of Forest avenue, which also is sixty-six feet wide. The west line of lot 3 is identical with the centre line of Forest avenue. The fence on Forest avenue is, at the north end, one-tenth of a foot west, and at the south end one foot west, of the east line of the thirty-three foot strip, measuring to the outside of the fence, but measuring to the inside of the posts, it is just about on the line. The fence on Thirty-fifth street is a little south of the south line of the street, as shown on the plat. As to who built these fences, or when, and under what circumstances they were built, the record is silent, further than may be inferred from the following testimony :

The witness Richards testified that he lived on the corner of Thirty-fifth street and Kankakee avenue, from September, 1861, to 1881 ; that he was gardening, and the lot he occupied was bounded on the east by Kankakee avenue, north by Douglas place, west by Forest avenue, and extended south about five or six hundred feet. Thirty-sixth street was not open. He rented from the agents for the ground ; that Forest avenue was not graded ; there was a roadway there,—a track where teams drove through ; that the fences were in the same place they now are,—the same posts ; that the agent of the property

told him that if he wanted more ground he might move the fences out thirty-three feet west and north. From the general appearance of the fence at the time he went there, he should think it had been there at least five or six years.

The witness Doane testified that he had been acquainted with the vicinity of Forest avenue and Thirty-fifth street since 1865; that he lived on the south-west corner about ten or eleven years,—had six hundred feet front on Forest avenue; that at that time (1865) there was a fence on the opposite— the east—side of Forest avenue, and he placed his fence, under direction of the county surveyor, sixty-six feet west of it. From appearances, he should think the fence had been there quite a while,—five or ten years,—and that it still remains in the same place, both on Douglas place and Forest avenue; that the street had always been called Forest avenue ever since he knew it. There was a track, from ten to fifteen feet wide, such as is made in teams passing. The street was not thrown up while he was there. For the last fourteen or fifteen years there had been a sidewalk on the west side; that a double brick house was built on the east side, fourteen or fifteen years ago, and a wooden one nearly opposite his lot, and between Thirty-fifth and Thirty-ninth streets there must have been at least six houses built on Forest avenue, from 1865 to 1875.

The witness Beren had known Forest avenue, from Thirty-fifth street south, since May, 1866. He bought, at that time, fifty feet on it, and built in 1882, and the year after there was a sidewalk built on the east side of the street; that the street was open the same width as far as Thirty-eighth street; whether to Thirty-ninth street, he was not positive. It appeared that appellees had all the while paid taxes on the whole of lot 3; that they were non-residents of the State; that the property was in the charge of local agents.

There was a stipulation as to certain facts, among which were, that July 23, 1873, the city council of Chicago passed an ordinance to widen Forest avenue from Thirty-fifth to

Thirty-ninth street, directing the condemnation, among other property, of this strip, which ordinance was afterwards repealed April 8, 1883; that on May 20, 1875, the city filed a petition to condemn, under that ordinance, which petition was dismissed December 7, 1885; that the gas company laid gas pipe through the strip, nine feet east of the centre line of Forest avenue, fifteen years before; that in 1875, the city made an assessment for lamp-posts, which was paid by appellees, and in the same year a lamp-post was erected about one hundred feet south from Thirty-fifth street, at the curb line, on the east side of the street; that the city, by ordinance, January 27, 1873, established the grade of Forest avenue from Thirty-fifth to Thirty-seventh street; that June 5, 1884, appellees built a fence on the north, west and south sides of the strip, connecting with the old fence; that the same day the city tore down the fence. The stipulation embraces some other projects of improvement of the street by the city, which, as they were subsequent to the petition for condemnation, and were resisted by appellees, it is not deemed material to mention. It appears further, that in the summer of 1879, the city constructed a three-foot brick sewer two and one-half feet east of the centre line of Forest avenue, from Thirty-fifth street south to Thirty-ninth street, but that license to do so was first asked and obtained from the agent in charge of the property.

From the facts appearing, we are of opinion the court was justified in finding that there had not been a dedication of this strip for the purpose of a street. There had been, it is true, user for a long time by the public, of the ground, for the purpose of travel. But this alone will not establish a dedication. It is of the essence of a dedication that there should be the intention to make the dedication, and the evidence should be clear, either of such actual intention or of such acts or declarations as will equitably estop the owner from denying such intention. *Grube* v. *Nichols*, 36 Ill. 92; *Kelly* v. *City of Chicago*, 48 id. 389; *McIntyre* v. *Storey*, 80 id. 127; *Herhold* v.

·*City of Chicago,* 108 id. 467; *City of Chicago* v. *Johnson,* 98 id. 618.

In *Grube* v. *Nichols,* it was said: "The intention to dedicate ·is a vital, controlling element in such a grant. A dedication is not an act of omission to assert a right, but it is the affirmative act of the mind of the donor. It arises from the active .and not the passive condition of the mind of the owner. The mere non-assertion of a right does not establish a dedication, unless the circumstances establish the purpose or intention ·to donate the use to the public." It was remarked in *Kelly* v. *City of Chicago:* "As this court has, in several cases, said, in order to justify us in holding that title has been divested by dedication, the proof should be very satisfactory, either of ·an actual intention to dedicate, or of such acts or declarations as should estop the owner from denying such intention." There was clearly no intention on the part of these appellees to make any dedication, or knowledge on their part that their land was being used for a street, until shortly before the suit was commenced, as they testify. But there might have been such an intention in some predecessor in the title, and that ·would have sufficed. The placing of the fences on the west and north sides of the lot, just thirty-three feet within both the ·west and north lines, and thus fencing out these two strips of thirty-three feet each, is very strong evidence of their being .left out for a street, and perhaps should be accepted as satisfactory evidence of a dedication, but for the strong countervailing evidence which is found in the case, that there had ·been no dedication. It is true, there is no direct evidence who .actually built the fences; but it may be fair to presume they were built by the owner, and especially when made, as they ·were, with such a manifest design and exactness of purpose to fence out just thirty-three feet. In disproof of intention to ·dedicate, Richards, the tenant, says the agent of the property ·told him, if he wanted more ground, to move the fences out ·thirty-three feet west and north, but he did not move them.

On July 23, 1873, the city passed an ordinance to widen Forest avenue from Thirty-fifth to Thirty-ninth street, and directing the condemnation, among other property, of this strip. The ordinance, though, on April 3, 1883, was repealed, and on May 20, 1875, the city filed a petition to condemn, under that ordinance, it being dismissed December 7, 1885. This ordinance and petition was most potent evidence that there had not been a dedication of this strip to public use, and should, we think,—particularly in connection with the applying for and obtaining by the city of a license to lay a sewer in the strip, as stated above,—conclude the city from asserting that there had been such a dedication. In *Town of Princeton* v. *Templeton*, 71 Ill. 71, it was held that such a condemnation proceeding a little further prosecuted was a clear admission that the town had no claim to the premises sought to be condemned, and was an admission that estopped the town from claiming a dedication.

That the gas company laid gas-pipe through the strip some fifteen years ago, does not appear to have been known to appellees. It was but an act of trespass, which we can not see should affect their title.

The making by the city, in 1875, of an assessment for lamp-posts, which was paid by appellees, and the erecting of a lamp-post, in the same year, on the east side of the street and of this strip, were after the commencement of the condemnation proceeding, and whilst it was pending. Appellees had reason to believe the strip would be condemned and made part of the street, and we see nothing in this lamp-post assessment and proceeding to make against appellees.

The appellee Wildman, and the mother of the appellees from whom they inherited, were minors much of the time. The appellees were all non-residents of the State, and we find nothing in the circumstances of this case which should equitably estop them from denying the dedication claimed.

The judgment of the Superior Court will be affirmed.

*Judgment affirmed.*