MARTHA JUVINALL *et al.*

*v.*

THE JAMESBURG DRAINAGE DISTRICT.

*Opinion filed October 26, 1903.*

1. CONSTITUTIONAL LAW—*part of section 37 of Drainage act is unconstitutional.* That part of section 37 of the Drainage act of 1879, as amended in 1885, (Laws of 1885, p. 125,) which provides that when "the court so orders" the commissioners may assess damages and benefits in lieu of a jury, is in violation of section 13 of article 2 of the constitution, requiring compensation for private property taken or damaged for public use to be ascertained by a jury.

2. Same—*objection to denial of jury trial in drainage case must be specifically made.* Unless a property owner in a drainage proceeding specifically objects to the denial of the right of trial by jury upon the question of damages and benefits, the objection is waived, and the judgment of confirmation is conclusive of that point.

3. Drainage—*compensation for land taken must be paid in money.* Under the constitution the compensation to be paid to the owner for land actually taken for drainage purposes must be paid in money, disregarding all benefits to land not taken.

Appeal from the County Court of Vermilion county; the Hon. S. Murray Clark, Judge, presiding.

This is a petition, filed in the county court of Vermilion county on July 25, 1902, to establish a drainage district under the provisions of the statute known as "An act to provide for the construction, reparation and protection of drains, ditches and levees, across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," approved and in force May 29, 1879. (2 Starr & Curt. Ann. Stat.—2d ed.—p. 1500). After notices given, an order was entered by the county court on October 6, 1902, reciting due notice by posting and publication, that there was a hearing, that the facts recited in the petition were true, that the same contained the requisite number of signatures, that the proposed ditch was necessary, etc.; and ordering that G. W. Dodson, J. D. Leonard and A. J. Sinkhorn be appointed commissioners "to lay out and construct the work proposed in said petition;" and requiring the commissioners to take the oath, and examine the land of the petitioners proposed to be drained, and the lands upon which the work is proposed to be constructed, and determine and report, first, the route; second, the probable cost; third, the annual expense of keeping in repair; fourth, what lands will be injured and probable amount of such damages; fifth, what lands will be benefited and probable amount of such benefits; sixth, whether any other lands will be damaged or benefited.

After such appointment the commissioners proceeded to examine the lands, and made a report. The report, so made by the commissioners, was filed on November 10, 1902, and in it the commissioners stated, first, that the proposed district would embrace all the lands that might be benefited by such drainage, except certain described tracts aggregating two hundred and sixty acres, which they added; second, the report recommended that an open ditch of the width of five feet at the bottom and seventeen feet at the top, with a uniform grade, etc., be built, and constructed along the route, described in the petition, and on and through the east half of the southeast quarter of section 19, town 21 north, range 12 west of the section line at the south end of the same; third, the report estimated the probable cost of keeping the ditch in repair, after the completion of the same, at $100.00 a year; fourth, it estimated the probable cost of the construction of the ditch to be about $7000.00; fifth, the report stated that none of the lands mentioned in the petition, and none of the lands added to the district, and none of the lands abutting the district, would sustain any damage because of or on account of the construction of the proposed ditch; and, sixth, the commissioners reported that in their belief, all the lands lying in said district, as described by the petition, and all the lands added to the district, would be benefited by such drainage as proposed, and that, in their judgment and opinion, the aggregate amount of said benefits would exceed the cost of constructing the proposed ditch, including all incidental expenses and costs of proceedings; and the commissioners to their report attached a plat, plan, profile and specifications of the proposed drainage district and ditch, as determined upon by them in their report, and made the same a part of their report, and stated that the appropriate starting point, route, and termini of said ditch and drainage district, and dimensions of the same, were as set forth.

A copy of the plat, so attached by the commissioners to their report, is as follows:

On due notice being given, the report of the commissioners was confirmed, and, at the December term, 1902,

an order was entered, confirming said report, and finding that the work proposed in the petition to be done would be useful for agricultural purposes to the owners of the land in said district; that a majority of the persons of lawful age, representing one-third of the land to be affected by said drainage work, signed the petition; that said drainage district of the corporate name mentioned in said petition, to-wit, "The Jamesburg Drainage District of the towns of Ross and Blount," be duly established as provided by law; and further ordering and directing that said commissioners "shall first take and subscribe the oath as required by law, and, in lieu of a jury, shall proceed to lay out, make and construct aforesaid ditch in accordance with the statute in such cases made and provided."

The commissioners took an oath, that they would faithfully and impartially perform the duties required of them to the best of their understanding and judgment, and "make assessments of damages and benefits in favor of or against the land in the aforesaid district according to law." An original assessment roll was made by the commissioners and filed on March 18, 1903, which, in its caption, states that it is an assessment roll of benefits. In the blank form, upon which the assessment roll is set out, the word, "damages," is struck out, and the roll, being entitled "assessment roll of commissioners," begins as follows: "We, the commissioners appointed and sworn to make assessments of benefits, which will be sustained by, or will accrue to, the land to be affected by the work proposed in said petition, do make such assessments in the words and figures following." The columns headed "amount of damages allowed," "excess of damages over benefits," and "excess of benefits over damages," are left blank. The certificate at the close of the assessment roll states, that it is an assessment of benefits, and recommends a division into three installments, one due on confirmation, one in twelve months, and one in twenty-four

months, with interest at six per cent per annum. The appellants, limiting their appearance, filed objections. The hearing of objections was set for March 31, 1903; the court referred the objections, which questioned the amount of benefits, to the commissioners, and overruled the others. The objections overruled were, (1) that there was no such drainage district; (2) that the attempted description of boundary lines in the order of the December term, 1902, was uncertain, insufficient and void; (4) that there was no order directing the commissioners to make any assessment; (5) that the alleged order was not in conformity with the statute; (6) that it did not direct damages to be assessed for lands taken, nor for lands damaged but not taken, nor allowed damages to lands not taken as an offset to benefits; (8) that the report does not set out damages to lands, through which the ditch passes, nor damages to lands not taken; (9) that the report was uncertain as to whether any such damages were considered; (12) that no report or estimate was ever made of the amount of damages to be paid for lands taken for making the improvement; nor has such cost been included in this assessment, nor has any release been obtained, nor has the compensation for the lands taken been in any way fixed; (14) that no notice has been given to the railroad company or commissioners of highways; (17) that the proceedings and assessments were illegal, irregular, without authority of law, and void.

A hearing was had before the commissioners, and evidence was heard on both sides, and a corrected roll was made out and filed, which changed the assessments on nearly every forty-acre tract of the appellant Juvinall's land, but made the aggregate exactly the same as in the original assessment roll. On April 1, 1903, the court entered an order, confirming the corrected assessment roll, to which exceptions were taken by the objectors. The present appeal is prosecuted from such judgment of confirmation.

WINTER & REARICK, and JOHN W. WEBSTER, for appellants.

WILSON & KENT, and KIMBROUGH & MEEKS, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

It is evident from the statement, which precedes this opinion, that the questions of damages to lands taken, were ignored by the commissioners in making the assessments. The objectors offered to show, on the hearing before the commissioners, in support of their objections, that they had lands, which were taken, and also lands that were damaged but not taken, but the trial court refused to allow the proofs so offered to be made, and entered an order overruling the objections, which raised the point.

The proceedings, however, show that land, belonging to the appellant, Juvinall, was taken for the construction of the proposed ditch. The plat upon its face shows, that the ditch ran north and south across the land, marked with the name of Martha Juvinall, and belonging to her. Although the commissioners took an oath to make assessments of damages and benefits, they seem to have considered benefits alone. The ditch, extending across the land of the appellant, Juvinall, was five feet wide at the bottom and seventeen feet at the top, and extended across two tracts of eighty acres each lying north and south of each other, and across a tract of one hundred and sixty acres lying south of both of the eighty-acre tracts. It is clear, therefore, that a portion of the land, belonging to appellant, Juvinall, seventeen feet wide at the top and five feet wide at the bottom, was taken for the purpose of constructing the drain or ditch in question. There is nothing in the evidence to show, so far as our attention has been called to it, what the value of the strip of land thus taken for the improvement was.

Inasmuch, however, as the land embraced in the strip was actually taken, the commissioners must have deducted the value of the land taken from the benefits to be derived from the improvement, in order to reach the amounts which they assessed as benefits; or they assessed benefits without taking into consideration at all the value of the land taken.

By the assignment of errors, the order, confirming the assessment, is attacked on several grounds, namely, the unconstitutionality of the statute; the void description of the boundary lines of the district; the want of an order directing the commissioners to make an assessment; and the failure to consider damages, as well as benefits. We deem it necessary only to consider the first and last of these grounds of attack, to-wit, the unconstitutionality of the statute, and the failure to consider damages, as well as benefits.

Section 16 of the Drainage act, above referred to, provides, among other things, as follows: "And thereupon the court shall empanel a jury of twelve men, having the qualifications of jurors in courts of record; or may, as provided by section 37 of this act, direct that the assessment of benefits herein named shall be made by the commissioners of said district." (2 Starr & Curt. Ann. Stat.— 2d ed.—p. 1508). Section 37 provides, among other things, as follows: "*Provided,* that when the right of way of the proposed ditches, drains or other work within any district has been released by the owners of the lands, over which the same is located, or when the owners of the lands in such district, about to be assessed, agree thereto, or in case the court so orders, the commissioners of said district may make any assessments of benefits, or damages and benefits, in lieu of a jury; and all the proceedings required of a jury in such cases by this act, shall be required of and observed by the commissioners as near as may be in making such assessments." (Ibid. pp. 1519, 1520).

204—8

In the case at bar, the order, entered at the December term, 1902, of the county court, was made in pursuance of the foregoing provision in section 37, and directed that the commissioners "in lieu of a jury, shall proceed to lay out, make and construct aforesaid ditch in accordance with the statutes in such cases made and provided." We regard that portion of section 37, which confers upon the commissioners the power to assess damages for land taken, in lieu of a jury, as clearly unconstitutional.

Section 13 of article 2 of the constitution of 1870 provides as follows: "Private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law." We have held that corporations existing for drainage purposes are public corporations, and that, where land is sought to be taken for the purpose of a ditch, it is for a public purpose, and compensation must be made before land of an individual can be taken for such public use. (*Payson* v. *People*, 175 Ill. 267, and cases there cited). It clearly appears from this record that a portion of the land of the appellant, Juvinall, has been taken for the purpose of constructing this drain or ditch, apparently without any compensation to her, unless in the form of benefits, and that such compensation, if awarded at all, has been fixed or awarded by three commissioners, instead of by a jury. The language of the constitution is clear and imperative, that not only shall private property not be taken or damaged for public use without just compensation, but that compensation, when not made by the State, shall be ascertained by a jury. Here, if it was ascertained at all, it was not ascertained by a jury, but by three commissioners, who had no power under the constitution to act in the matter of fixing such compensation.

We have recently held in the case of *Wabash Railroad Co.* v. *Drainage District*, 194 Ill. 310, that the sections of this act of May 29, 1879, which attempt to provide for

the assessment of damages by a jury, are unconstitutional, as not designating for that purpose such a jury as is contemplated by the organic law.  In the case of *Wabash Railroad Co.* v. *Drainage District, supra,* we held that the body of men, brought together in the mode prescribed by section 16 of the Levee act, did not constitute a legal jury; that the course of proceeding directed by section 17 of the act to be pursued in determining compensation was not such judicial ascertainment of such compensation, as was contemplated by the constitutional provisions bearing on the subject; that such section is, in that respect, in violation of the constitution, and inoperative and void; and that the provisions of sections 20 and 21 of the act, granting the property owner the right to appear before the jury and object to their report, did not secure to such owner a fair and impartial judicial ascertainment of the just compensation to be paid for his property, that was to be appropriated to the uses of the drainage district.  Surely, if the jury, provided for by the above mentioned sections of the act, do not constitute such a legal jury as was contemplated by the constitution, and if those sections were for that reason unconstitutional, then section 37, which ignores altogether the empaneling of a jury, and provides for action by the commissioners of the district, is also unconstitutional.

It will not do to say, that damages for the land taken were offset against the benefits, and deducted from the benefits.  We have held that, under the constitution, the compensation to be paid to the owner for private property must be in money alone, disregarding all benefits to the portion of the land not taken, and that it is not within the power of the legislature to disregard this provision, and to take property without compensation, or to provide for paying it in benefits. (*Ginn* v. *Moultrie Drainage District,* 188 Ill. 305; *McCaleb* v. *Coon Run Drainage District,* 190 id. 555).  In *Ginn* v. *Moultrie Drainage District, supra,* we said: "The entry upon land and the construction of a

ditch for drainage purposes constitute, in law, a taking and appropriation of a perpetual easement and interest in the land, which is protected from invasion even as against the owner of the land. The same rules for ascertaining the damages, which prevail in proceedings for the condemnation of private property for public use, apply to cases arising under the drainage statute. (*Chronic v. Pugh*, 136 Ill. 539.) * * * No benefits can be set off against compensation for land actually taken." In the *Ginn case* we held that "corporations, organized for drainage purposes, cannot take private property for constructing any drainage ditch without making compensation to the owner of such property in money, and not in benefits."

The provision of the statute here under consideration ignores the right of the property owner to a trial by jury.

Counsel for appellee seem to anticipate fatal consequences to drainage districts already organized, if this statute, providing for action by commissioners instead of a jury, is held to be unconstitutional. No such result can follow, because, unless the property owner files an objection setting forth specifically the denial of the right to a trial by jury, the right is waived, and the judgment of confirmation is conclusive. (*McCaleb* v. *Coon Run Drainage District, supra*).

We are of the opinion that the county court erred in not sustaining the objections based upon the unconstitutionality of the statute, and the failure to consider damages as well as benefits.

In what is here said we have only considered the questions raised and discussed as applicable to the lands of the appellant, Martha Juvinall, inasmuch as the other appellant, S. B. Deamude, has dismissed his appeal to this court.

For the reasons above stated, the judgment of the county court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.    *Reversed and remanded.*