## RHEINBERGER v. SECURITY LIFE INS. CO. OF AMERICA.

### No. 11683.

District Court, N. D. Illinois, E. D.

Aug. 14, 1943.

190

Lytton & Olson, of Chicago, Ill., for plaintiff.

O. D. Buckles, Corp. Counsel, and Mason & Mason, all of Chicago, for defendants.

LINDLEY, District Judge.

The trustee of Security Life Insurance Company, under administration in this court, having in his custody certain real property of the estate in the City of Evanston, described as follows: The South one-ninth of the Southwest Quarter of the Southeast Quarter and the South Sixteen feet of the East Ninety feet of the North Half of the South two-ninths of the Southwest Quarter of the Southeast Quarter of Section twenty-four. Township forty-one North, Range thirteen East of the Third Principal Meridian, subject to rights of the public and of the City of Evanston in and to that part of said South one-ninth of said Southwest Quarter lying west of a line Forty feet East of and parallel with the West line of said Southeast Quarter, con-

demned and taken for the widening of Dodge Avenue, in Cook County, Illinois, filed his petition April 23, 1940, averring that the City is illegally occupying a portion of said premises, viz., the east thirty-nine feet and the south thirty-three feet and using the two strips wrongfully as a part of Florence Avenue and of Oakton Street respectively, and that such occupancy constitutes a continued trespass. He prayed that the City be enjoined from withholding possession from him and from obstructing the two parcels and required "to compensate or reimburse petitioner and defendant's estate herein for withholding from said petitioner and obstructing said strips or parcels of land and depriving petitioner from the use, improvement and enjoyment thereof."

The City answered May 17, 1940, and, eventually, on January 15, 1941, the hearing was begun. However, after presentation of petitioner's evidence, at the City's request, it was adjourned to be completed later. On February 2, 1941, the answer was amended and still later, the cause came on for further hearing upon trustee's amended petition, the amended answer and the reply thereto.

I limited the testimony to the question of whether the trustee is entitled to an injunction as prayed, as I deemed it wise to adjudicate that issue before concluding evidence as to compensation. I excluded all evidence of events prior to 1931 when, in a decree of foreclosure and sale, the Circuit Court of Cook County, Illinois, at the suit of Security, in which the City of Evanston was party defendant, decreed and adjudged that complainant had a lien upon the premises here involved and certain other land and that any and all interests or claims of whatsoever character of the City and other defendants therein were inferior and subordinate thereto. In so ruling I held the decree an effectual adjudication of title as between Security and the City as of that date, and ruled that this court has no right, power or jurisdiction to review that decree; that all defenses raised at that time and all that might have been raised, as against the averment of title in plaintiff, were adjudicated by the decree; and that, therefore, this court is without right to consider any evidence upon defenses asserted to have arisen prior to the date of that

decree. But the City has persisted in its contention that I should have considered evidence of events prior to 1931 and, for that reason, I have seen fit in this memorandum to discuss the legal questions thus raised.

On December 7, 1925, Carrie B. Barker, being indebted to Security for $25,000, "conveyed and warranted," by trust deed, the land first above described herein (excluding however the exception therein) to secure the debt. Upon default by the mortgagor on June 26, 1930, the mortgagee filed suit to foreclose, including the city as a party defendant and averring that the rights and interests of any and all defendants were "subject and inferior to" the lien of complainant. The city answered, denying that the "rights of the complainant in and to the property" were superior to those of that defendant and asserting superior title in it to that portion represented by the exception by virtue of a condemnation judgment entered subsequent to the mortgage and title in the other two strips by virtue of a quit-claim deed from Mrs. Barker to the City, subsequent to the mortgage, and by virtue of long continued possession by the City.

The master reported and the court found that all defendants' rights and interests in and to the mortgaged property were "subject and inferior to" complainants' lien. The decree, October 20, 1931, provided for sale and, in the absence of redemption, that "all defendants and all persons claiming under them or either of them," "be forever barred" from all "claims in and to said premises and every part and parcel thereof." *

No appeal was taken; a master's sale was made to Security and duly approved, and master's deed issued on July 3, 1934 to the trustees of Security appointed by this court.

The Trustee seeks to restrain the City from using any of the property thus acquired and to remove the improvements on the north thirty-three feet of Oakton Street, and the west thirty-three feet of Florence Avenue. The City contends that the Circuit Court of Cook County had no power to determine in the foreclosure proceeding the City's right to the strips, since its title to the property, acquired by com-

---

\* The foreclosure decree found the City's right to the exception contained in the description superior because of the condemnation in 1926 and denied the City's other claims. The exception is not in controversy here.

mon law dedication and long and continuous use, was adverse and superior to that of the mortgagee and that as a result, the foreclosure court exceeded its jurisdiction and the City may now assert its title to the strips. The trustee insists that since the Circuit Court had jurisdiction of the subject matter and of the parties, including the City, and acted within the scope of its powers, the decree is binding and may be questioned only by direct appeal. Since no appeal has been taken, the trustee's position is that the City is forever barred from questioning the adjudication collaterally.

Obviously, a decree entered without jurisdiction, or in excess of jurisdiction, is void and subject to collateral attack. Armstrong v. Obucino, 300 Ill. 140, 133 N. E. 58; Leviton v. Board of Education, 374 Ill. 594, 30 N.E.2d 497; Chicago Title & Trust Co. v. Mack, 347 Ill. 480, 180 N.E. 412. However, if the court has jurisdiction of the subject matter and the parties and acts within its legal limitations, any error committed can be corrected only by appeal; otherwise it is silenced forever, Knaus v. Chicago Title & Trust Co., 365 Ill. 588, 592, 7 N.E.2d 298; Wolff v. Schwill & Co., 351 Ill. 28, 33, 183 N.E. 567; Miller v. Rowan, 251 Ill. 344, 96 N.E. 285. When a party asserting an interest adverse to the mortgagee is joined in a foreclosure suit, the court's question is not one of jurisdiction but one of propriety. A failure to appeal is vital, final and determinative; a collateral attack is futile. Sielbeck v. Grothman, 248 Ill. 435, 94 N.E. 67, 21 Ann.Cas. 229; Knaus v. Chicago Title & Trust Co., 365 Ill. 588, 7 N.E.2d 298; Johnston v. San Francisco Sav. Bank, 75 Cal. 134, 16 P. 753, 7 Am.St.Rep. 129; 1 Will. on Mortgage Foreclosures, 4th Ed., 547; see Waller v. River Forest, 259 Ill. 223, 102 N.E. 290; Chicago Theological Seminary v. Gage, 103 Ill. 175; Clark v. Zaleski, 253 Ill. 63, 97 N.E. 272; Crane v. Crane, 341 Ill. 363, 173 N.E. 352; Cromwell v. MacLean, 123 N.Y. 474, 25 N.E. 932.

In Chicago Theological Seminary v. Gage, 103 Ill. 175, the mortgagee made Gage a party, averring that he claimed some interest in the property but that such interest, if any, was subordinate to the rights of the mortgagee. Gage was served but failed to appear. The complaint was taken as confessed and a final decree entered, finding that Gage's claim under a tax deed was void. Gage appealed, and the Supreme Court, upholding the decision, said

at page 182: "But suppose the bill showed upon its face that the tax deeds in this case were an independent outstanding title, and that as to them the complainant had a complete remedy at law, it does not follow the decree should be reversed. It would simply show that there were good two defences to the bill, if insisted on at the proper time and in the legal mode, namely, multifariousness, and that the complainant had a complete remedy at law, yet nothing is better settled than that neither of those defences can be availed of in the first instance, as is sought to be done here, in a court of review."

In Knaus v. Chicago Title & Trust Co., 365 Ill. 588, 7 N.E.2d 298, a trust deed secured a loan from a State Bank. Foreclosure proceedings were instituted, naming Knaus as defendant, he having purchased the property subject to the trust deed. A decree of foreclosure was rendered, the property sold to the Trust Company and, on failure to redeem, a master's deed issued. Subsequently Knaus filed a bill to set aside the decree, alleging that the Trust Company had no authority to purchase the bonds, that its action in doing so constituted a breach of fiduciary relation, and that in purchasing them it had voluntarily effectuated payment of them, and that thereby the lien was discharged. Knaus averred that these facts constituted such fraud as to deprive the court rendering the foreclosure decree of jurisdiction. The Supreme Court said, at page 592 of 365 Ill., at page 300 of 7 N.E.2d: "That the court had jurisdiction of the person cannot be denied, because appellants appeared and defended. There can be no question that the circuit court of Cook county had jurisdiction of foreclosure cases. * * * Jurisdiction of the subject matter is the power to hear and determine cases of the general class to which the proceedings in question belong. Such jurisdiction is conferred by the Constitution or by legislative enactment and does not depend upon the sufficiency of the bill of complaint in a particular case, the validity of the demand set forth therein, the regularity of the proceedings, or the correctness of the decision rendered. * * * Where a decree is rendered by a court having jurisdiction of the person and of the subject-matter, it is not subject to attack in a collateral proceeding. * * * In Miller v. Rowan, 251 Ill. 344, 96 N.E. 285, 286, we said: 'Jurisdiction of the subject-matter is the power to

adjudge concerning the general question involved, and, if a bill states a case belong-·ing to a general class over which the authority of the court extends, the jurisdiction attaches, and no error committed by the court can render the judgment void. If the court has jurisdiction, it is altogether immaterial, when the judgment is collaterally called in question, how grossly irregular or manifestly erroneous its proceedings may have been. The judgment cannot be regarded as a nullity, and cannot, therefore, be collaterally impeached. Such a judgment is binding on the parties and on every other court, unless reversed or annulled in a direct proceeding and is not open to collateral attack.' * * * The decree in the foreclosure suit is plainly not open to collateral attack."

In Clark v. Zaleski, 253 Ill. 63, 97 N.E. 272, a decree foreclosed a lien for unpaid taxes, all persons asserting interests being parties. Redemption failing, the purchaser acquired title which passed to Clark and Zaleski. Subsequently a partition suit was instituted, and the persons involved in the foreclosure proceeding were made parties. Several defendants who claimed an interest in the property sought to attack the foreclosure decree. The court said at pages 82, 84 of 253 Ill., at page 279 of 97 N.E.: "The decree finds that the court had jurisdiction, and that appellees had complied with the law entitling them to a deed. This finding, in a collateral proceeding, must be regarded as conclusive and binding upon all parties to the record and their privies. Appellants were parties to the original foreclosure proceeding, and were duly notified of the filing of the petition upon which the supplemental decree was entered. * * * If appellant Glos had any lien upon or other interest in the premises that was not subject to the tax lien being foreclosed, being a party to the foreclosure proceeding it was his duty to set up such lien or interest and have it adjudicated and settled in the foreclosure proceeding. Having failed to do so and having acquiesced in a decree finding that he had no such interest he is now barred by such foreclosure decree from making such claim in this suit."

Similar are Crane v. Crane, 341 Ill. 363, 173 N.E. 352, and Waller v. River Forest, 259 Ill. 223, 102 N.E. 290.

In Sielbeck v. Grothman, 248 Ill. 435, 94 N.E. 67, 21 Ann.Cas. 229, S's father, having title, died, leaving a widow and four children, including S. Subsequently the widow alone mortgaged the property. Default having occurred, foreclosure suit was instituted. The children, all of age, were parties and entered their appearance but made no answer. A decree was rendered against them, the court finding the fee to the land to be in the mother. The property was sold and, no redemption having been made, a master's deed issued to the purchaser. Subsequently one child sought to eject the purchaser, asserting that the finding in the foreclosure suit that the fee was in his mother was not binding. He claimed that the mother could mortgage only her dower and homestead, and that the remainder still rested in plaintiff and his brothers and sister. The trial court denied the claim and the Supreme Court affirmed, saying, at page 439, of 248 Ill., at page 68 of 94 N.E., 21 Ann.Cas. 229: "If persons having prior interests are made parties to a foreclosure proceeding and do not demur, answer, or assert their prior rights, but allow judgment to be taken, and the bill states and the decree finds that the title is subject to the mortgage, the parties, after the foreclosure proceedings, are estopped from setting up collaterally such prior interest. * * * The question of a title being paramount or adverse should be raised in the foreclosure proceeding and not for the first time collaterally. * * * The bill alleges, and the decree found, that the title in fee was held by the mortgagor, the mother of appellant, and that he and his sister and brothers were the owners of the equity of redemption, and that decision, even though wrong, is binding here upon the parties to the· foreclosure suit."

So here the complaint averred, and the court found, that Mrs. Barker, in order to secure the sum borrowed, "conveyed and warranted" title to the property to the trustee and that any interest of the named defendants, including the City, was subordinate and inferior to that of Security.

Section 9 of the Conveyance Act, Ill.Rev. Stat. c. 30 sec. 8, provides that a warranty deed shall be sufficient if it "conveys and warrants" and that "every deed in substance in the above form, when otherwise duly executed, shall be deemed and held a conveyance in fee simple." Section 11 of the Act provides that if a mortgage contains the words "and warrants" it "shall be construed the same as if full covenants

194

of seizin, good right to convey against incumbrances of quiet enjoyment and general warranty * * * were fully written therein." Accepting these statutory definitions for "conveyed and warranted," the averment in the complaint must be read as charging that Mrs. Barker conveyed a fee simple as security for the money borrowed. The finding that Mrs. Barker conveyed a fee and that the interest of the defendants was subordinate is a sufficient finding of title in the mortgagee to satisfy the requirements of the Sielbeck case. See Rohrhof v. Schmidt, 218 Ill. 585, 586, 75 N.E. 1062.

The City contends, however, that the foreclosure complaint contained no sufficiently apt allegations of a fee in the mortgagor as against the City's prior interest to justify the City in asserting in that suit any interest acquired prior to execution of the mortgage. From the language of the complaint, however, it was clear that Security was claiming the fee by virtue of the conveyance of Mrs. Barker. The complaint averred that any alleged interest in the City was inferior or subordinate. Obviously the City understood the scope of the complaint, for it set up in defense not only the condemnation proceedings of 1929 and the quitclaim deed of 1926, both subsequent to the mortgage, but also the long and continuous user of Florence Avenue by the City and public prior to the execution of the mortgage. The court found against it. It now reasserts the same defenses. It asks this court to readjudicate what the state court adjudged. Whether the City then felt that its defense of long and continuous user was weak and insufficient is unimportant; whatever its motive, it had full opportunity to present its defense there. Its claim was finally adjudicated.

It is said, however, that the City could not properly have raised in the foreclosure case any claim to the strips arising from facts existing prior to the mortgage, since the matters dealt with in a foreclosure are only the interests of the mortgagor and mortgagee and those of others arising subsequent to the mortgage. But, inasmuch as the City, when made a party, though claiming an adverse interest, made no attempt to obtain dismissal from the suit because it was an improper party, and did in fact raise the defenses which were adjudicated, it can hardly be permitted to claim now that it was not able to introduce evidence to support its alleged adverse interest. See Helck v. Reinheimer, 105 N.Y. 470, 12 N.E. 37, cited with approval in Sielbeck v. Grothman, 248 Ill. 435, 439, 94 N.E. 67, 21 Ann.Cas. 229. If plaintiff in the foreclosure proceedings had objected to presentation of such defenses, it would have been a simple matter for the city to have moved to be dismissed from the suit as an improper party.

Nor is lack of diligence upon the City's part in protecting its rights any excuse. To permit it to attack the adjudication would result in a review of the state court's judgment by this court. Under the doctrine of res adjudicata, the judgment settled not only the questions and objections raised by the City in its answer, but every question which might have been raised. Bradley v. Lightcap, 201 Ill. 511, 66 N.E. 546 reversed on other grounds 195 U.S. 1, 24 S.Ct. 748, 49 L.Ed. 65; Godschalck v. Weber, 247 Ill. 269, 93 N. E. 241; Barry v. Commonwealth Ed. Co., 374 Ill. 473, 29 N.E.2d 1014.

The contention that Security's title is barred because the rights of the public in a street can be divested only by abandonment, vacation or equitable estoppel is without merit and equivocal in character. The time to urge that was when the title was adjudged to be Security's. Thus, in Healy v. Deering, 231 Ill. 423, 83 N.E. 226, 121 Am.St.Rep. 331, certain parties sued in equity claiming to own a portion of a street which had originally been dedicated to the public, and which the City had improved. The City was a party to the suit. Subsequently an ordinance was adopted vacating the street, and, in pursuance of the ordinance, a decree was entered in the injunction suit finding complainants to be the owners in fee of the portion of the street in question and enjoining the City from interfering therewith. Subsequently another bill was filed by the states attorney seeking to set aside the vacation ordinance and the decree of the court in the prior suit. In holding that this bill should be dismissed and the former decree held binding, the court said, at page 430 of 231 Ill., at page 228 of 83 N.E. 121, Am.St.Rep. 331: "A city's relation to its streets and alleys is that of trustee for the use and benefit of the public, and in legal proceedings, where the existence of a public street is involved, the public may be represented by the city or by the Attorney General or the state's

attorney. If a suit is instituted by an individual to establish the title to and recover the possession of land claimed by a city to be a public street, it is not necessary that both the city and the people of the state should be made parties to the suit in order that the judgment may be binding upon the public. Neither is it necessary in an action to establish the existence of a public street that the people of the state and city should join as plaintiffs. In such case, where the city is a party, it is the representative of the public. The people of the state are privies, and a judgment not the result of fraud and collusion is binding upon the people."

■ The City further asserts that it should be permitted to offer evidence that its title to the strips has been ascertained in certain special assessment proceedings where judgments of confirmation were entered. It insists that the court had jurisdiction in these proceedings, under Section 53 of the Local Improvement Act (Ill. Rev.Stat. c. 24, sec. 84—53) to try title incidentally to the entry of the judgment of confirmation; that the judgment entered determined that the City had acquired the land and is now res adjudicata on that question; and that as a result, the foreclosure decree of 1931 could not alter the effect of such prior judgments. If citation of authority is necessary, Cobe v. City of Chicago, 246 Ill. 625, 93 N.E. 46, appears decisive of this question. There certain parties sought to restrain Chicago from interfering with certain property. Prior to suit, the city had adopted an ordinance to lay sidewalks on the property and in the confirmation proceedings of the assessment roll, the parties instituting this suit had filed their objections, one being that the property was not a public street for the reason that it had previously been vacated. The objections were sustained by the county court. In the injunction suit the court held the judgment in the special assessment proceedings an adjudication as to the title to the land binding upon the city. Reversing the trial court, the Supreme Court held that the county court had no jurisdiction to try a cause involving a freehold or render any binding judgment as to the title. The court said at page 635 of 246 Ill., at page 49 of 93 N.E.: "Section 53 empowers the county court simply to determine the question of title as it may arise incidentally to the determination of the main question of the confirmation of the assessment, and the judgment of the court has no force and effect upon that question except in that particular proceeding."

It is obvious, therefore, that this defense would necessarily be denied if it were asserted for the first time. It is equally clear that if such proof constituted a good defense it should have been presented in the foreclosure proceedings.

■ The City contends that the evidence disclosed that the trustee is guilty of laches. In support, it relies largely on the paving of Oakton Street and other improvements made prior to the foreclosure decree in 1931. There can be no basis for laches in such improvements, since the foreclosure decree finding title to the strips subsequent to the events in Security is decisive.

Defendant must show laches since the decree of 1931. Since that date, the City alleges, it has erected electric light standards with underground cables in 1932, planted elm trees in 1935, and resurfaced Florence Avenue in 1935. The trustee replies that it demanded formally possession of the strips and upon failure to comply instituted this suit.

■ Laches is such neglect or omission to assert a right, as, taken in conjunction with lapse of time and other circumstances creating prejudice to the opposite party, relying upon such inaction, operates as a bar in equity. Morse v. Seibold, 147 Ill. 318, 325, 35 N.E. 369. Mere delay alone, short of the period fixed as a bar by statute, will not preclude assertion of an equitable right. It is only when, by delay and neglect to assert a right, the adverse party is lulled into doing that which he would not have done or into omitting to do that which he would have done in reference to the property had the right been promptly asserted, that the defense can be considered. Gibbons v. Hoag, 95 Ill. 45, 69; Hubbard v. United States Mortgage Co., 14 Ill.App. 40, 50; Lynn v. Worthington, 266 Ill. 414, 419, 107 N.E. 729; Totten v. Totten, 294 Ill. 70, 88, 128 N.E. 295. In other words, damaging circumstances as well as lapse of time must concur to create laches barring relief. Harris v. McIntyre, 118 Ill. 275, 289, 8 N.E. 182; Castner v. Walrod, 83 Ill. 171, 174, 25 Am.Rep. 369; Becker v. Billings, 220 Ill.App. 342. And it is within the

discretion of the court to determine what constitutes laches. Evans v. Woodsworth, 213 Ill. 404, 72 N.E. 1082.

In Burrall v. American Telephone Co., 224 Ill. 266, 79 N.E. 705, 8 L.R.A.,N.S., 1091, plaintiff filed complaint to restrain defendant from further trespasses upon a public highway, the fee of which was in plaintiff, and to compel it to remove its poles and wires. After the bill was filed, defendant made substantial additions to the telephone line. As a defense, defendant averred that plaintiff had stood by and permitted it to construct the line and had not interfered with it thereafter. The poles and wires were first erected in October, 1896, and the suit was instituted in January, 1904, over seven years later. In holding plaintiff entitled to a mandatory injunction, the court said, at page 269 of 224 Ill., at page 705 of 79 N.E., 8 L.R.A., N.S., 1091:

"The injunction was sought for the protection of a legal right, and in such a case delay alone will not defeat the remedy, unless it has been continued so long as to bar the right itself. There was nothing in this case to defeat complainant but the mere lapse of time, unaccompanied by any equities on the part of the defendant. All that is insisted upon is, that an invasion of legal rights shall be permitted to continue because it has existed for a number of years. Defendant did not act in ignorance of the real title, or enter upon the highway believing that it had any title whatever, and it knew just as much about the facts of the case as the complainant. True, it erected some poles and wires, but their removal does not require their destruction, as would be the case with some kinds of permanent structures. Defendant is in no different position from any person who enters upon the land of another knowing that he has no right, and that nothing but the statute of limitations will prevent his being ejected therefrom. Defendant has not changed its position in any way in reliance upon any act of the complainant, and we discover nothing that ought to prevent the enforcement of complainant's rights.

"The fact that a large number of long distance telephone messages are sent over this line daily, and therefore it would be convenient for the public to have the defendant occupy complainant's land, is of no importance whatever. If the land is needed for a public use, the law provides a way for acquiring it, and the Constitution prohibits its appropriation for such a use without compensation. * * * The court should have decreed a mandatory injunction as prayed for in the bill, and such an injunction would not prevent defendant from obtaining a grant from the complainant of the right to maintain its line or acquiring such right under the Eminent Domain law."

In Spalding v. Macomb & W. Illinois Ry. Co., 225 Ill. 585, 80 N.E. 327, plaintiff sought to compel defendant to remove its railway from the public street, to which plaintiff claimed the fee, and to restrain defendant from continuing operation of the railroad. The City had granted a franchise to construct a railroad on the street, and the defendant had done so. The court declared the fee lodged in plaintiff; that a mandatory injunction should be granted on the ground that construction of a steam railway in a street where the fee belongs to the abutting landowners creates an additional servitude and that the landowner is entitled to enjoin the railroad from operation. The court further said, at page 591, of 225 Ill., at page 329 of 80 N.E.:

"Defendant in error further insists that, while this court has granted injunctions restraining the construction of a railroad on facts such as alleged in this bill, it has never held that a court of equity had authority to grant an injunction, such as herein prayed for, after the railroad has been constructed and is in operation. * * * In the recent case of Burrall v. American Telephone Co., 224 Ill. 266, 79 N.E. 705 [8 L.R.A.,N.S., 1091], * * * we held that a telephone line in a public highway is an additional burden upon the owner of the fee, for which the owner is entitled to compensation and of which a court of equity can compel the removal by injunction. This decision, with the authorities therein cited, is conclusive as to the right of a court of equity to interfere on a proper showing and issue a mandatory injunction in cases of this kind.

"The further contention is made that, even had a mandatory injunction been proper in the first instance, the bill shows that there was such laches on the part of plaintiff in error that such injunction ought not to be issued at the present time. This bill was filed August 28, 1905, and alleges that on or about December 1, 1903, the railway was constructed over the premises in question. * * * On the facts as alleged

in the bill we are not prepared to hold that plaintiff in error was guilty of laches in not beginning these proceedings at an earlier date."

Similar is Compton v. Johnson, 240 Ill. 621, at page 625, 88 N.E. 991, at page 993, where the court said: "Appellee did no affirmative act to lead the appellants to believe that he was not the owner of this land. It is true that acquiescence by the owner in a transaction in which his real estate is conveyed for a valuable consideration by another may bar the owner from asserting his title in equity, irrespective of the passage of time, but to have that effect the acquiescence must be of a character which would give rise to an estoppel. * * * No such conduct of appellee is here shown. The most that can be said is that he delayed the assertion of his rights. Mere delay alone for a period less than that covered by the statute of limitations is not laches that constitutes a defense. It is only when the delay is accompanied by some other element rendering it inequitable to permit the owner to assert his title that the laches will bar his right within the statutory period."

■ In each of these cases the title holder knew that the other party had come upon his land and done certain things and had sat by for a number of years, neither assenting nor dissenting, remaining passive. The precise situation exists here. In 1931, title was adjudged to be in Security. The City, a party to that proceeding, was acquainted with and bound by the terms of the decree. Despite this, the City put in electric light posts, planted trees and resurfaced one of the streets. It had no more right to do so than the railroad company which constructed a railroad line on property under an invalid franchise, or than persons who collected rents and made improvements on a farm under an ineffective quit-claim deed. Mere inaction by Security or its trustee was not sufficient to constitute laches.

■ Nor is the lapse of time such as to constitute laches. In Burrall v. American Telephone Co., 224 Ill. 266, 79 N.E. 705, 8 L.R.A.,N.S., 1091, a period of seven years had elapsed since the poles were first erected. In Spalding v. Macomb & W. Ry. Co., 225 Ill. 585, 80 N.E. 327, the railroad tracks had been laid approximately two years. In each case, the trespasser had already expended large sums of money in erecting poles and wires or tracks.

There was in existence a continuing trespass. The real effort and expenditure had been made and there was little or no serious change of position on the part of the trespasser. The oft repeated phrase "mere delay alone for a period less than that covered by the statute of limitations is not laches that constitutes a defense" is pertinent. Compton v. Johnson, 240 Ill. 621, 88 N.E. 991, 993; Lynn v. Worthington, 266 Ill. 414, 107 N.E. 729; Totten v. Totten, 294 Ill. 70, 88, 128 N.E. 295; Gibbons v. Hoag, 95 Ill. 45, 69; Hubbard v. United States Mortgage Co., 14 Ill.App. 40, 50.

■ It is claimed that hardship will result from forcing the City to tear up what it has put in. The pavements and sewers were laid prior to the foreclosure decree. The only cost added since the city was adjudged to be without title is that of light posts and of trees planted. Clearly, the removal of light posts would work no greater burden than taking down telephone poles as in Burrall v. American Telephone Co., 224 Ill. 266, 79 N.E. 705, 8 L.R.A.,N.S., 1091. And removal of the trees planted should be no more arduous than tearing up railroad tracks, as in Spalding v. Macomb & W. Ry. Co., 225 Ill. 585, 80 N.E. 327.

■ Finally, it is urged, in support of laches, that requiring the City to tear up improvements would result in great inconvenience to the public. This is perhaps best answered by the court in Burrall v. American Telephone Co., 224 Ill. 266, 269, 79 N.E. 705, 706, 8 L.R.A.,N.S., 1091, where the court said: "The fact that a large number of long distance telephone messages are sent over this line daily, and therefore it would be convenient for the public to have the defendant occupy complainant's land, is of no importance whatsoever. If the land is needed for a public use, the law provides a way for acquiring it, and the Constitution prohibits its appropriation for such a use without compensation. * * * The court should have decreed a mandatory injunction as prayed for in the bill, and such an injunction would not prevent defendant from obtaining a grant from the complainant of the right to maintain its line or acquiring such right under the eminent domain law."

■ The City's contention that a mandatory injunction is improper because the alleged illegal invasion of Security's property has already been accomplished can be

dismissed shortly. There is obviously a continuing trespass, and equity must grant relief. Burrall v. American Telephone Co., 224 Ill. 266, 79 N.E. 705, 8 L.R.A.,N.S., 1091; Spalding v. Macomb & W. Ill. Ry. Co., 225 Ill. 585, 80 N.E. 327. In Lyle v. Chicago, 357 Ill. 41, 44, 191 N.E. 255, 256, 93 A.L.R. 1492, the court said: "Mandatory injunctions are often granted where the defendant is guilty of a continuing wrong upon the plaintiff, from the further perpetration of which he ought to be enjoined, and where the termination of the wrongful conduct involves a restoration of conditions existing before the wrongful conduct began."

The City attempts to show prior dedication of the property for road purposes. But under the foreclosure decree, clear title to the property has been in Security since 1931. Any claim of right to the strip arising from facts prior to 1931, comes too late. Furthermore, by making the City a party to the foreclosure proceedings, Security definitely negatived any intent to dedicate the strips to the public. Thus there was lacking an element essential to common law dedication—an intent to dedicate. City of Chicago v. Hill, 124 Ill. 646, 652, 17 N.E. 46; Phillips v. Leininger, 280 Ill. 132, 138, 117 N.E. 497; McIntyre v. Storey, 80 Ill. 127. Subsequently, for some time, Security did nothing. However, dedication results from an active, not a passive, state of the owner's mind, and mere nonassertion of an intent will not establish it, unless the circumstances show a purpose to donate. City of Chicago v. Borden, 190 Ill. 430, 442, 60 N.E. 915; City of Chicago v. Chicago, Rock Island & P. Ry. Co., 152 Ill. 561, 571, 38 N.E. 768. Security exhibited no evidence of such intent. In fact, the decree finding title in Security and its written demand for possession definitely indicate the contrary.

Nor is there a dedication by user. The statute provides (Ill.Rev.Stat. c. 121, sec. 152) that: "All roads in this state * * * used by the public as highways for fifteen (15) years, and which have not been vacated in pursuance of law, are hereby declared to be public highways." Obviously, there has been no lapse of fifteen years since the decree of 1931, which definitely fixed title as of that date in Security, not in the City.

It is further claimed that, admitting the trespass, compensation to be recovered by the trustee is limited to a period of five years preceding filing suit, that is from 1937 to 1941. Section 15 of the Limitations Act (Ill.Rev.Stat. c. 83, sec. 16) provides that: "Actions * * * to recover damages for an injury done to property, real or personal * * * shall be commenced within five years next after the cause of action accrued." The provisions of this statute of limitations do not apply to cases of continuing trespass. Maton Bros. v. Central Illinois Pub. Serv. Co., 269 Ill.App. 99, 119, affirmed 356 Ill. 584, 191 N.E. 321.

A final objection is that the City was denied a jury trial on the question of compensation, under section 13 of Article II of the Illinois Constitution, Smith-Hurd Stats., under which "Private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the state, shall be ascertained by a jury, as shall be prescribed by law."

This objection may be disposed of on two grounds. In the first place, it is apparent that the purpose of this provision is to protect the private individual, not the public body, and it is only the former who has the right to a jury trial. Moore v. Gar Creek Drainage Dist., 266 Ill. 399, 403, 107 N.E. 642. Further, at the time the issues were joined in court, and the hearing begun, counsel for the City voluntarily participated in the hearing, cross examined witnesses and requested a continuance and a subsequent opportunity to present his evidence, all without demand for a jury. This was a waiver of the right. Juvinall v. Jamesburg Drainage District, 204 Ill. 106, 116, 68 N.E. 440.

The trustee is entitled to a prohibitory and mandatory injunction to remove the pavement and other improvements in the strips. Proper judgment may be submitted.

The foregoing includes my findings of fact and conclusions of law.